## Garrett *versus* Dewart.

*Right of Sheriff's Vendee to rent accrued and accruing.*

1. Though a bidder at a sheriff's sale may have an inceptive interest in land struck down to him, which may be bound by the lien of a judgment before the acknowledgment of the deed, his title does not relate back to the date of his bid so as to divest from that time the ownership of the debtor whose land has been sold: until the sale is consummated by the acknowledgment and delivery of the deed, the debtor is entitled to possession with its advantages.

2. Where land of a defendant in an execution was sold April 21st 1860, and the amount of the bid paid down to the sheriff, who paid it into court for distribution among creditors, but the deed was not acknowledged until September 27th following, before which time, on September 1st, the landlord's share of the rent payable in grain, had been by the terms of the lease delivered to him, the purchasers at sheriff's sale were not entitled to it: the rent had accrued on September 1st, and the defendant, then the landlord, was entitled to the share as such.

3. The payment of the purchase-money at the time of the sale and before it was made payable by the conditions of sale, gave the purchasers no greater interest than they would have had without it: nor did the fact that the mortgage, under which the sale was decreed and made, was anterior to the renewed lease with the tenant on the farm, give them any claim to the rent which had accrued before the sale was made, and while the mortgagor was in possession.

ERROR to the Common Pleas of *Northumberland county*.

This was an action of covenant, brought November 13th 1860, by William L. Dewart against George Garrett, in which the following case was stated for the opinion of the court:—

By articles of agreement, dated the 2d day of March, A. D. 1846, sealed and delivered by and between Lewis Dewart of the one part and George Garrett, the defendant, on the other part, said Lewis Dewart demised and leased unto the said George Garrett a certain messuage and tract of land, of which the said Lewis Dewart was seised in fee simple, situate in Penn township, then in Union, now in Snyder county and state of Pennsylvania, and then occupied by Christian and Henry Martin, for the term of one year, commencing the 1st of April 1846 and ending the 1st April 1847; and by the same articles of agreement the said George Garrett covenanted "to deliver one-half of all the grain, wheat, rye, corn, buckwheat, and oats" raised on the demised premises "to the said Lewis in the mow or corn-crib," and then to thrash it and deliver it in the bushel in the said Lewis's storehouse, or in any storehouse in Charlestown, Selinsgrove, or the

[Garrett *v.* Dewart.]

neighbourhood. The said Lewis's share of corn to be put into his cribs until he should want it thrashed, then, upon giving the said George information, he to thrash and haul and put it in the storehouse of said Lewis, or in a boat at the canal, or any place in the neighbourhood, at his, George's, expense—the said Lewis to have one-third of the turnips raised on the place delivered at the barn—the said George to give the said Lewis all the hay and straw, with the grain in or out, raised on the place, to be delivered either in stack or at the barn, but the said George is to have the use of all, or so much of the hay and straw as he might want to feed his cattle for the purpose of making manure for the place, it being the intention of the said Lewis that all the hay and straw should be used on the farm, and that neither party take or suffer any to be taken off of said farm."

Under the said demise and lease the said George Garrett, on the 1st day of April, A. D. 1846, entered into the possession of the said demised premises, and held the same under the said demise and lease, as the tenant of the said Lewis Dewart from year to year, until the death of the said Lewis Dewart, which occurred on the 26th day of April, A. D. 1852. By his will, dated the 10th day of December, A. D. 1851, and duly proved the 12th day of May 1852, the said Lewis Dewart devised the said demised premises and farm in fee simple to William L. Dewart, who was also his only child and heir, and is the plaintiff in this action. After the death of the said Lewis Dewart, the said George Garrett held the said demised premises and farm, under the same demise and lease of the 2d of March 1846, as tenant from year to year of the said William L. Dewart, until the 1st day of April 1859, on which day they, the said William L. Dewart and George Garrett, sealed and delivered the following agreement between them, written upon the back of the aforesaid articles of agreement between the said Lewis Dewart and George Garrett, dated the 2d day of March 1846, viz. :—

" It is hereby agreed that the within agreement is extended for three years, except that the said George is not hereafter to thrash the corn, but is to thrash and deliver all the other grain as usual whenever I may direct him to do it during each year; he may also sell eleven tons of hay during this term. This extension of the within lease is to run from this date. Witness our hands and seals this 1st day of April 1859.

" W. L. Dewart. [L. s.],
" George Garrett. [L. s.]"

" Witness : S. D. Jordan."

After the death of his father, William L. Dewart executed a mortgage of the said demised premises and farm to J. W. Bassler, to secure the payment of $10,000 to him, which mortgage is

[Garrett *v.* Dewart.]

dated the 23d day of May 1857, and was duly recorded in the recorder's office of Snyder county on the 23d day of November 1857.    The said J. W. Bassler afterwards sued out a writ of *scire facias* upon the said mortgage in the Court of Common Pleas of Snyder county, and recovered judgment thereon for the amount of the said mortgage-money against the said premises.    A writ of *levare facias* was issued out of the said court, No. 5 of May Term 1860, upon the said judgment, by virtue of which writ the sheriff of Snyder county levied upon, and on the 21st day of May 1860 sold the said demised premises to George Schnure and John Hummel, and afterwards, on the 27th day of September 1860, by his deed acknowledged on this last-mentioned day before · the said Court of Common Pleas of Snyder county, granted and conveyed the said demised premises unto the said George Schnure and John Hummel and their heirs.

George Garrett raised on the said demised premises six hundred and seventy-three bushels and fifty pounds of red wheat, and one hundred and ninety-nine bushels and fifty-four pounds of white wheat, which was sown in the month of September 1859, and harvested and put in the mow in the barn on the said premises in the month of July 1860, and was thrashed during the months of October and November of the same year; also seven hundred and sixty bushels of oats, which was sown in the month of April 1860, and harvested and put in the mow in the barn on the said premises in the month of July of the same year, and thrashed during the months of October and November of the same year.

On the 1st day of August 1860, William L. Dewart served the following notice in writing upon the said George Garrett personally, to wit:—

"Notice to George Garrett, tenant.—I hereby give you notice that I wish you to thrash and deliver, by the 1st day of September next, the landlord's share of the crop you have just harvested and garnered on the farm you hold as tenant under a lease from me.                                "W. L. DEWART."

"Sunbury, August 1st 1860."

The defendant, George Garrett, has not delivered to the said William L. Dewart the landlord's share of the said wheat or oats, or any part thereof.    The said red wheat is of the value of $1.10 per bushel, the said white wheat is of the value of $1.18 per bushel, and the said oats is of the value of twenty-five cents per bushel.

The parties also agree to the following facts, to be considered by the court in the decision of this cause, to wit:—The conditions of the above-mentioned sheriff's sale, made the 21st day of May 1860, as aforesaid, were that "30 per cent. of the purchase-

money should be paid when the property was struck down, and the balance at the September court (then) next, when a deed would be acknowledged and delivered by the sheriff to the purchaser." And the said demised premises were purchased at the said sheriff's sale by the said George Schnure and John Hummel, on the above-mentioned conditions. On the 26th of May 1860 the sheriff paid into court $14,340, the amount of the purchase-money after deducting the expenses of sale, &c.; and on the same day the said court, on the application of the counsel for the execution-creditor, J. W. Bassler, appointed an auditor to distribute the fund in court to and among the lien-creditors of the said William L. Dewart. On the 25th September 1860 the said auditor made report to the said court of the distribution of the said fund to and among the said creditors, which report on the same day was read and confirmed *nisi* by the said court, and was confirmed absolutely by the court on the 25th October 1860. On the 26th June 1860, William L. Dewart filed in said court exceptions to the said sheriff's sale, and the court granted a rule on the parties interested to show cause why the said sale should not be set aside. After argument, the court, on the 27th September 1860, overruled the said exceptions, discharged the said rule to show cause, and ordered the said deed to be acknowledged, and the said sheriff's deed was acknowledged and delivered the same day as above stated. The said defendant, George Garrett, continued in possession of the said demised premises under the above-mentioned demise and lease until the 1st of April 1861, when he accepted a new lease from the said George Schnure and John Hummel. It is also agreed between the said parties, that the said George Schnure and John Hummel, shortly after the day of the said sheriff's sale, and before any of the said grain was cut, notified the said George Garrett that they claimed the landlord's share of the said grain by virtue of their purchase of the said demised premises at the said sheriff's sale, and required him the said George Garrett not to pay or deliver the said rent to the plaintiff, but to pay and deliver it to them, and that they still claim the same of the said George Garrett.

If the court shall be of opinion that said plaintiff was entitled to receive of and from the said defendant the one-half part of the said wheat and oats, then judgment to be entered in favour of the plaintiff for the sum of $677.30, with interest from the 13th November 1860, and costs of suit. But if the court shall be of opinion that the said plaintiff was entitled to receive of and from the said defendant the one-half part of the said wheat, but no part of the said oats, then judgment to be entered in favour of the plaintiff for the sum of $487.30, with interest on the same from the 13th of November 1860, with costs of suit. But if the court shall be of opinion that the said plaintiff was not entitled

to recover of and from the said defendant any part of either the said wheat or of the said oats, then judgment to be entered in favour of the defendant against the plaintiff for the costs of suit. It is agreed that either party shall have the right to sue out and have a writ of error, &c.

The court below (JORDAN, P. J.) held that the rent had actually accrued; that it was paid by its delivery into the mow according to the terms of the lease, and was not rent becoming due and payable. Judgment on the case stated was therefore entered in favour of the plaintiff for the sum of $677.30, with interest from the 13th March 1860 to November 4th 1861, making together the sum of $716.81; which was assigned for error on writ of error purchased by the defendant below.

Pending these proceedings Garrett died, and George App, administrator with the will of deceased, was substituted.

*George Hill* and *George F. Miller*, for plaintiff in error, contended that the landlord's share of the wheat and oats growing on the farm at the time of the sheriff's sale was the property of the sheriff's vendees; that rent reserved upon a lease for years accompanies the reversion, unless separated by an express reservation, citing the Act of 16th June 1836, §§ 119, 120, Br. Purd. 348; Johnson *v.* Smith, 3 Penna. Rep. 500; Bank of Pennsylvania *v.* Wise, 3 Watts 394; Braddee *v.* Wiley, 10 Id. 362; Rinehart *v.* Olwine, 5 W. & S. 157; Boyd *v.* McCombs, 4 Barr 146; Menough's Appeal, 5 W. & S. 432; Sallade *v.* James, 6 Barr 144; Cobel *v.* Cobel, 8 Id. 342. That although the deed was not acknowledged (because of exceptions that were filed by Mr. Dewart) until after the grain was cut, the sheriff's vendees having paid the whole of the purchase-money while the grain was growing were in fact the owners of the land from that time: Morrison *v.* Wurtz, 7 Watts 437; Stephen's Appeal, 8 W. & S. 186.

*Joshua W. Comly*, for defendant in error.—As the mortgage of William L. Dewart to Bassler was executed and recorded prior to the extension of the lease by Dewart and Garrett on the 1st of April 1859, the purchasers at sheriff's sale of the mortgage premises sold upon the judgment recovered upon the mortgage, and the acknowledgment and delivery of the sheriff's deed to them, had the option to affirm or disaffirm the lease as they pleased. If they had disaffirmed the lease, they would have had not a reversion, but a right to the land in possession, and would have been without pretence of claim to any part of the grain in dispute: Bank *v.* Ege, 9 Watts 436; Hemphill *v.* Tevis, 4 W. & S. 541. Had they evicted Garrett, he might have defended against the claim for rent for the then current year on the ground

[Garrett v. Dewart.]

of the eviction, but would not thereby have been relieved from his obligation to pay the rent for the previous year, which expired on the 1st of April 1860. He would still have been liable to deliver to the plaintiff the landlord's share of the wheat, the value of which is claimed in this action. They did not disaffirm the lease, but on the contrary affirmed it. After the delivery of the sheriff's deed to them and their affirmance of the lease, Schnure and Hummel became seised of the reversion.

"The wheat was sown in September 1859, and belonged to the tenancy of the year, which ended on the 1st of April 1860, before the sheriff's sale, and therefore the purchasers are not entitled to any share of the grain as rent. It was a sale after the expiration of the term out of which the rent accrued, and the rent did not go with the reversion: Borrell v. Dewart, 1 Wright 134–138."

The oats were sown in April 1860, and belonged to the tenancy of the year, which ended on the 1st of April 1861. Garrett had possession of the demised premises during this year under the lease, and was bound to deliver the landlord's share of the oats to either Dewart, his lessor, or to Schnure and Hummel, as owners of the reversion. The sheriff's deed for the premises to Schnure and Hummel was acknowledged on the 27th of September 1860, and before that day they were not entitled to either the possession or the rents or profits: Hawk v. Sterich, 5 S. & R. 157–161; Morrison v. Wurtz, 7 Watts 438; Storch v. Carr, 4 Casey 135; Act of 16th June 1836, § 119; Bank v. Ege, 9 Watts 436; Fullerton v. Shauffer, 2 Jones 220. In the cases of Bank v. Wise, 3 Watts 394, and Braddee v. Wiley, 10 Id. 362, the rent is expressly stated to have become due after the acknowledgment of the sheriff's deed in each case. By the terms of the lease and notice, the landlord's share of the oats became deliverable on the 1st of September 1860; it was rent payable on that day, and never was rent "accruing at or after the acknowledgment of the sheriff's deed."

The opinion of the court was delivered, November 17th 1862, by

STRONG, J.—We are of opinion that the rent which is in controversy in this case had accrued before the acknowledgment and delivery of the deed to the purchasers at sheriff's sale. By the terms of the lease, the grain in which the rent was payable was to be delivered to the landlord in the mow or corncrib. Then, that is, after its delivery, the tenant was under obligation to thrash it, and deliver it at some storehouse; and he covenanted to thrash and deliver all the grain except corn, whenever, in each year, he might be directed by the landlord to do it. The dispute in this case relates to the wheat and oats. The wheat was sown on the demised premises in September 1859, and the oats were sown in April 1860. Both crops were harvested and put in the

[Garrett *v.* Dewart.]

mow in July 1860. On the 1st of August, in that year, the landlord gave notice to the tenant to thrash and deliver the crops by the 1st of September then next following, but they were not thrashed until October and November. Now, if it be conceded that the time of delivery in the mow was not the time fixed for the payment of the rent, it is not to be questioned that the rent was payable when the landlord directed the grain to be thrashed and delivered. It matters not what the custom of the country is in regard to the time of thrashing. The parties did not leave the time to be determined by custom. They defined it by their contract. Nor has it anything to do with the case, that the grain may not in fact have been so delivered as to vest the ownership in the landlord, so as to enable him to maintain replevin. The inquiry in hand does not relate to the ownership of the grain. It is, when was it deliverable or payable according to the contract? for when the rent became due and payable, then it had accrued. In every aspect of the case, therefore, the rent must be considered as having accrued by the 1st of September 1860.

The sheriff's deed of the landlord's interest in the farm was acknowledged and delivered on the 27th of September 1860, after the rent had accrued or become due and payable. The purchasers at the sheriff's sale are not then entitled to the grain, unless their position is improved by the other facts found in the case stated, to which we will now refer. The sheriff's sale was made on the 21st of May 1860, and the conditions of the sale were that " thirty per cent. of the purchase-money should be paid when the property was struck down, and the balance at the September court then next, when a deed would be acknowledged and delivered to the purchaser." Upon these conditions the property was struck down. The purchasers appear to have paid the whole amount of their bid at once, and to have notified the tenant that they claimed the landlord's share of the grain. Exceptions to the confirmation of the sale were filed by the landlord, but they were overruled, and the deed was acknowledged and delivered at the time appointed in the conditions of sale. The tenant continued in possession of the demised premises under the lease until the 1st of April 1861, when a new lease was made to him by the purchasers.

It hardly needs be said that the payment of all the purchase-money before it was made payable by the conditions of sale gave the purchasers no greater interest in the land than they would have had without an anticipated payment. By the contract, they were not entitled to a deed until the September court, and it may fairly be presumed that they bid less because the delivery of the deed was to be so long delayed.

The argument of the plaintiff in error is, that when the property was struck off to the purchasers (May 21st 1860), they

[Garrett v. Dewart.]

acquired an inceptive interest in the farm; that when the deed was subsequently made to them, their title related back to its inception; and that they became the owners of the reversion from that time. It is true that it has been held that a bidder at a sheriff's sale, to whom the property has been struck down, has an inceptive interest in it which may be bound by the lien of a judgment, even before the acknowledgment of the sheriff's deed. Yet it by no means follows from this, that after he has obtained his deed his title relates to the date of his bid in any such sense as to divest from that time the ownership of the debtor whose land has been sold. Undoubtedly it does not. Until the sale has been consummated by the acknowledgment and delivery of the deed, the debtor is entitled to the possession with all its attendant advantages. Until then, the purchaser cannot move a step towards dispossessing the debtor or his tenant; and though he may have a possible or inceptive interest, like a purchaser by articles who has paid no money, he has acquired no title to the present enjoyment. His rights, as against a tenant of the execution defendant, are clearly defined in the 119th section of the Act of June 16th 1836, entitled "An Act relating to Executions." It is there declared that he shall be deemed, upon receiving a deed for the land, "the landlord of such tenant, lessee, or other person, and shall have the like remedies to recover any rents or sums *accruing subsequently to the acknowledgment of a deed to him*," as the defendant might have had if no such sale had been made. Decided cases also recognise the right of a purchaser to no other rents than such as accrue after the acknowledgment of the sheriff's deed and its delivery: Scribner v. Stanley, 2 Rawle 278; Boyd v. McCombs, 4 Barr 146. In cases where the mortgage or judgment under which the property has been sold is paramount to the lease, he has the option to affirm or disaffirm the lease. If he disaffirms it, he can claim no rent: Bank v. Ege, 9 Watts 436. If he affirms it, he becomes landlord only from the time when he receives his deed. In this case the tenancy was affirmed.

The fact that the mortgage under which the sale was decreed and made was anterior to the renewed lease to the tenant, does not strengthen the claim of the purchasers to the rents which had accrued when the sale was made. The profits of land belong to the person who is in rightful possession by himself or his tenants. The mortgage did not disturb the mortgagor's right to the possession. That was done only by the sale.

It follows that there was no error in giving judgment for the plaintiff on the case stated. There appears, however, to have been an error in the amount, which we correct.

Judgment affirmed for $624. 18, with interest from November 4th 1861.