# DiDonato et ux., Appellants, *v.* Reliance Standard Life Insurance Company.

Argued November 19, 1968. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Lawrence J. Richette,* for appellants.

*Marvin Comisky,* with him *Harry O. Boreth,* and *Blank, Rudenko, Klaus & Rome,* for appellee.

OPINION BY MR. JUSTICE EAGEN, January 15, 1969:

The legal question presented in this appeal arises in the context of a somewhat cumbersome fact situation. On August 4, 1965, the Reliance Standard Life Insurance Company (hereinafter Reliance) entered into an Agreement of Sale with Anthony and Viola Di-Donato (hereinafter appellants). Under the terms of the contract, Reliance agreed to sell to the appellants for $16,000 the premises located at 1015-23 South 3rd Street, Philadelphia. Reliance executed a certification in compliance with the Act of July 27, 1955, P. L. 288, as amended, 21 P.S. 613.1, stating that the premises were zoned industrial. This certification was correct and was appended to the Agreement of Sale.

On September 22, 1965, an ordinance[1] was enacted which changed the zoning of the premises from G-2 Industrial to R-10 Residential. Not until November 9, 1965, however, did the public records note this change.

On October 7, 1965, the transaction was settled. At that time, Reliance's representative delivered to the appellants a certification which was procured from the

---

[1] The proposed ordinance was first publicly advertised on July 23, 1965. Council held its first public hearing on the ordinance on August 11th. The first and second readings took place on August 19th and September 9th. The Mayor signed the ordinance into law on September 22nd.

Department of Licenses and Inspections of the City of Philadelphia on September 28, 1965. The certification statement erroneously indicated that the subject premises were still zoned G-2 Industrial. As of this date neither Reliance nor the appellants were aware of the change in the zoning classification.

In 1967, the appellants contracted to sell the subject premises, and then learned for the first time of the zoning change. After unsuccessfully seeking a variance, the appellants brought an equity action against Reliance to rescind the Agreement of Sale of August 4, 1965. The Chancellor entered an adjudication in favor of Reliance, and his findings of fact and conclusions of law were subsequently affirmed by the court en banc; from its final decree this appeal followed.

In their brief to this Court, the appellants seek to find ground for a rescission upon the misrepresentation contained in the certification delivered to them at the settlement proceeding. The argument seems to be that the erroneous certification that the premises were industrial constituted a material misrepresentation, a breach of warranty, justifying rescission.

There can be no doubt that at the settlement, there was a misrepresentation as to the zoning status of the subject premises. But that fact is not determinative in resolving this controversy. It only helps us to focus upon the terminal issue in the case. For even if the certification had recited that the subject premises were zoned residential, the appellants would have a right to rescind only if the risk of a zoning change remained with Reliance until settlement. In other words, the fact that the appellants were deceived as to the correct zoning status of the premises is inconsequential. The crucial inquiry is which of the litigants bore the risk of loss attending the zoning change between the Agreement of Sale and the settlement.

The question presented is one of first impression in Pennsylvania. However, it is well-established law here that when the Agreement of Sale is signed, the purchaser becomes the equitable or beneficial owner through the doctrine of equitable conversion. The vendor retains merely a security interest for the payment of the unpaid purchase money. *Payne v. Clark,* 409. Pa. 557, 187 A. 2d 769 (1963). It is also the law of Pennsylvania that the purchaser of real estate bears the risk of loss for injury occurring to the property after execution of the Agreement of Sale but before the settlement. *Spratt v. Greenfield,* 279 Pa. 437, 124 A. 126 (1924) ; *Rappaport v. Savitz,* 208 Pa. Superior Ct. 175, 220 A. 2d 401 (1966).

In resolving the question here, we are aided by the thinking of Professor Arthur Linton Corbin, who enunciates the general rule as follows : "After a contract for the sale of land has been made, but before actual conveyance, it sometimes happens that a zoning ordinance is adopted limiting the uses to which the property may be put. For example, it may be restricted to residences only, so that warehouses, garages, and the like are excluded. This change in the law may frustrate in part or in whole the purpose for which the purchaser agreed to buy the land. *In the absence of some expression in the contract to the contrary, the risk of such a restriction by ordinance seems likely to be allocated to the purchaser.*" (Emphasis supplied.) 6 Corbin, Contracts §1361 (1962), and the cases cited therein.

Samuel A. Goldberg, writing under the aegis of the American Law Institute, said in his book entitled Sales of Real Estate in Pennsylvania at page 98 :

*"Zoning Change Between Agreement and Settlement.* It is also conceivable that between the time of the execution of the agreement and settlement, the zoning ordinance may be amended. If, when the buyer signs

the agreement, his projected use is lawful, the only way in which he can protect himself is to include in the agreement a clause substantially as follows:

" 'If prior to settlement, an amendment to the zoning ordinance or any other law, ordinance or regulation comes into effect, which prohibits the operation of bowling alleys upon the property, Buyer shall have the right upon giving written notice to Seller, at or before settlement, to cancel this agreement and to recover all moneys paid to Seller on account.' "

The persuasiveness of the above authorities dictates the result here. There appears to be no cogent argument for treating losses resulting from zoning changes occurring between the execution of the Agreement of Sale and settlement differently from casualty and other kinds of loss occurring between those periods. The parties are always free to mold rights and responsibilities inter se in whatever fashion they desire. But when they are quiet, the law will speak in a voice of finality to set their dispute to rest.

We have examined the other grounds for relief proposed by the appellants, and find them unmeritorious.

Decree affirmed.

Each side to pay own costs.