360 A.2d 580

**In re ESTATE of Helen C. HIGHBERGER, Deceased.**

**Appeal of the COMMONWEALTH of Pennsylvania.**

Supreme Court of Pennsylvania.

Argued March 8, 1976.

Decided July 6, 1976.

———◆———

Robert P. Kane, Atty. Gen., Janet Moschetta, Vincent J. Dopko, Asst. Attys. Gen., Vincent X. Yakowicz, Sol. Gen., Harrisburg, for appellant.

James C. Larrimer, Dougherty, Larrimer & Lee, Pittsburgh, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Helen C. Highberger, a resident of New Jersey, died on March 24, 1971. Decedent was the record title holder of real property in Washington County, Pennsylvania. By agreement dated July 30, 1970, decedent had agreed to sell that property to Mr. and Mrs. William R. Taylor for $25,500. The agreement provided that the Taylors would take immediate possession of the property, make a $5,500 down payment, and make monthly payments until September 1, 1973, at which time the balance of the proceeds were due and a deed was to be delivered. The issue presented is whether decedent's interest in the property is subject to the Pennsylvania Transfer Inheritance Tax.[1] The Orphans' Court held that the property was exempt from the tax. We reverse.[2]

1. See Act of June 15, 1961, P.L. 373, §§ 101 et seq., 72 P.S. §§ 2485–101 et seq. (1964).

2. We hear this appeal under authority of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(3), 17 P.S. § 211.202(3) (Supp.1975).

The Pennsylvania Inheritance and Estate Tax Act of 1961 provides:

"An inheritance tax for the use of the Commonwealth is hereby imposed upon every transfer subject to tax under this act at the rates hereinafter specified." [3]

Section 212 of the Act provides: "All transfers of property, as defined in this act . . . are subject to tax under this act." [4]

We must determine whether decedent's interest in the Washington County property was within the act's definition of "property." Section 102 of the Act defines property, in relevant part, as:

"(iv) All real property and all tangible personal property of a non-resident decedent or transferor having its situs in Pennsylvania, including such property held in trust;" [5]

Appellant, the Commonwealth, argues that non-resident decedent had an interest in real property having its situs in Pennsylvania, that no exemption is applicable, and that the transfer of the property interest is therefore taxable. Appellee, the Estate of Helen C. Highberger, contends that the execution of the agreement to sell the Pennsylvania realty converted decedent's interest into tangible personalty, exempt from the tax.[6]

█ It is settled law in Pennsylvania that the execution of an agreement of sale of real property converts, through the doctrine of equitable conversion, the seller's interest into personalty and the buyer's interest into

3. Act of June 15, 1961, P.L. 373, art. II, § 201, 72 P.S. § 2485–201 (1964).

4. Id. § 212, 72 P.S. § 2485–212 (1964).

5. Id., art. I, § 102(17)(iv), 72 P.S. § 2485–102(17)(iv) (1964).

6. "Intangible personal property held by . . . a decedent who, at the time of his death was a non-resident, is exempt from inheritance tax."
Id., art. III, § 306, 72 P.S. § 2485–306 (1964).

realty. The seller is said to hold legal title as trustee for the purchaser.[7]

However useful the doctrine of equitable conversion may be as a theory of property law it is not necessarily applicable in tax matters. Subject, of course, to constitutional limitations the Legislature is free to tax what it will.[8] We must look to the intent of the Legislature, rather than to doctrines of property law, to determine whether decedent's interest in the property is within the definition of property set forth in the act. In so doing, we are mindful that exemptions contained in taxing statutes are to be narrowly construed[9] and additional exemptions are not to be judicially created.[10]

This Court has previously considered whether the doctrine of equitable conversion is to be applied in inheritance tax cases. In *Commonwealth v. Presbyterian Hospital,* 287 Pa. 49, 134 A. 427 (1926), decedent, a non-resident, directed in his will that his real property in Pennsylvania be sold. The executor argued that the non-resident's interest in Pennsylvania realty was not taxable because the decedent's testamentary instructions worked an equitable conversion making the property interest intan-

7. *Payne v. Clark,* 409 Pa. 557, 561, 187 A.2d 769–70 (1963); *Kerr v. Day,* 14 Pa. 112 (1850); see, Ladner on Conveyancing in Pennsylvania, § 5:26 (3d ed. 1961); cf. *DiDonato v. Reliance Standard Life Ins. Co.,* 433 Pa. 221, 249 A.2d 327 (1969).

8. See *Mastrangelo v. Buckley,* 433 Pa. 352, 250 A.2d 447 (1969); *Goldstein v. School District,* 372 Pa. 188, 93 A.2d 243 (1953); *In re Baltimore & Philadelphia Steamboat Co.,* 302 Pa. 364, 153 A. 559 (1931); *Clouser v. Reading,* 270 Pa. 92, 113 A. 188 (1921); *Hilbish v. Catherman,* 64 Pa. 154 (1870); *Weister v. Hade,* 52 Pa. 474 (1866).

9. See, e. g., *Four Freedoms House of Philadelphia v. Philadelphia,* 443 Pa. 215, 279 A.2d 155 (1971); *Y. M. C. A. v. Reading,* 402 Pa. 592, 167 A.2d 469 (1961); *McGuire v. Pittsburgh School District,* 359 Pa. 602, 60 A.2d 44 (1948); *Commonwealth v. Clark,* 344 Pa. 155, 25 A.2d 143 (1942); *Commonwealth v. Philadelphia Toilet & Laundry Co.,* 339 Pa. 261, 13 A.2d 411 (1940).

10. Cf. *Wynnfield United Presbyterian Church v. Philadelphia,* 348 Pa. 252, 35 A.2d 276 (1944); *In re Bayer's Estate,* 345 Pa. 308, 26 A.2d 202 (1942).

gible personalty. We there rejected the invitation to apply equitable conversion in the inheritance tax context.[11]

In *Paul's Estate*, 303 Pa. 330, 154 A. 503 (1931), a Pennsylvania resident died while under agreement to sell real property situated in New Jersey. The Commonwealth sought to assess a transfer inheritance tax and argued that the contract for the sale of the land was taxable personalty, because of the equitable conversion. We rejected the application of equitable conversion, stating:

> "We are asked to disregard the fact of the testator still holding title to and possession of the lands, and to indulge in the make-believe that the land had been transmuted into something else. We are not prepared to do so."

Decedent's interest in the land was held to be not taxable.

The Legislature subsequently acted to clarify the definition of "property" in the Act to make an interest, such as decedent held in *Paul's Estate*, taxable.[12]

Appellee contends that the Legislature clearly acted to repudiate this Court's assertions in *Paul's Estate* that equitable conversion was not applicable in an inheritance tax case. We do not agree with this interpretation. Rather, the subsequent change in the Inheritance Tax

11. *Commonwealth v. Presbyterian Hospital* reversed a long line of cases which held that directions in a will to sell property worked an equitable conversion of the property. See e. g., *Brennan's Estate*, 277 Pa. 509, 121 A. 321 (1923); *Davidson v. Bright*, 267 Pa. 580, 110 A. 301 (1920); *Chamberlain's Estate*, 257 Pa. 113, 101 A. 314 (1917); *Handley's Estate*, 181 Pa. 339, 37 A. 587 (1897).

12. In the Act of June 15, 1961, P.L. 373, art. I, § 102, 72 P.S. § 2485–102(17)(iii) (1964), the General Assembly changed the definition of "property" formerly suggested by the Act of 1919, P.L. 521, § 1(b), formerly codified as 72 P.S. § 2301. The change specifically addresses "All real property and all tangible personal property having its situs outside the Commonwealth, owned by a resident decedent . . . ." The 1963 Report of the Joint State Government Commission states, "This changes existing case law: *Paul's Est.* . . . ." The changed section does not, however, deal with the question presented in this case.

Act only altered the definition of property as it concerned resident decedents.[13] The change may better be viewed as an indication that the General Assembly wished to tax to the fullest extent constitutionally possible, without regard to whether equitable conversion took place. Knowing that this Court did not favor application of the doctrine in the tax context, the Legislature did not see a need to address the question in terms of the definition of property of a non-resident. Thus, the legislative action shows that the General Assembly intended to disavow this Court's rejection of equitable conversion only when the rejection of the doctrine resulted in an exemption from the tax. When, as here, our failure to apply the fiction results in imposition of the tax the legislative intent is accommodated.[14]

This is the conclusion reached by Grossman and Smith in Pennsylvania Inheritance and Estate Tax (1971 ed.), § 102(17)(iv)–3.3, at 26–27:

"The 1961 Act is silent as to equitable conversion in the case of a nonresident's Pennsylvania realty bound by a contract to sell, and the issue thus becomes whether *Paul's Estate* has overruled the earlier decisions, or whether those earlier decisions survive under 1961 § 102(17)(iv) as part of the definition of 'real property.' *Paul's Estate* can certainly be interpreted

13. See note 12, supra. Subsection (17)(iv), applicable in this case, was not altered from the form originally suggested by the Act of 1919, P.L. 21, § 1(b), formerly codified as 72 P.S. § 2301.

14. This result was also reached in *Hufnagel Estate*, 64 Pa.D. & C. 2d 572 (Allegheny Co. O.C.1969) which presented the identical fact situation except the vendor had possession on the date of death. The doctrine of equitable conversion has been applied in inheritance tax cases by courts in some other states. E. g., *Department of Revenue v. Baxter*, 486 P.2d 360 (Alaska 1971); *Estate of Briebach*, 132 Mont. 437, 318 P.2d 223 (Mont.1957); *In re Eilermann's Estate*, 179 Wash. 15, 35 P.2d 763 (Wash.1934). The decision of those courts was, of course, based on their case law and statutes. The actions of the Pennsylvania General Assembly, in view of our case law, persuades us that equitable conversion is not to be applied in this case.

as a forceful repudiation of the doctrine of equitable conversion in tax matters, applicable to all estates even though the problem of a resident decedent's realty located outside Pennsylvania was the only problem there before the court. If this be true interpretation, then all aspects of the rule of equitable conversion for tax purposes have vanished from the tax law dealing with the definition of 'real property,' and the rule is not revived in the 1961 Act in respect to nonresidents owning Pennsylvania realty. Such realty would remain taxable even though under agreement of sale at the nonresident's death, for equitable conversion is revived only in 1961 § 102(17)(iii), which is not applicable to nonresidents.

· · · · · · · ·

"It would seem self-evident that the rule intended to be embodied in 1961 § 102(17) was that real estate remained real estate, regardless of testamentary powers of sale or agreements of sale not ripening into conveyances before death, and that equitable conversion is a part of the 1961 law only in the limited situation described in 1961 § 102(17)(iii). There is no indication that 'real property' as used in 1961 § 102(17)(i) means anything different from the same term as used in 1961 § 102(17)(iv), and the implication to be derived from the very existence of 1961 § 102(17)(iii) is that the legislature believed that, absent that provision, equitable conversion was completely ineffective under the Act. Since 1961 § 102(17)(iii) revives the doctrine only for residents owning realty outside Pennsylvania, and only in certain specific situations there described, the application of the doctrine, in any of its aspects, to Pennsylvania realty owned by nonresidents, would be equivalent to a determination that the term 'real property' had wholly different meanings in 1961 §§ 102(17)(i) and (iv), meaning realty without regard to equitable conversion when used in 1961 §

102(17)(i) [hence the need for 1961 § 102(17)(iii)] and realty only after the doctrine had been applied when used in 1961 § 102(17)(iv).

"Therefore, it would appear to be the law under the 1961 Act that a nonresident's Pennsylvania realty remains taxable in Pennsylvania despite the existence of facts giving rise to equitable conversion for non-tax purposes."

■ ■ Appellee correctly points to a number of situations where equitable conversion would be applied and decedent's interest would be considered personalty.[15] In none of these cases, however, would the doctrine be applied in the face of a discernible legislative intent to the contrary. Here, decedent held legal title to Pennsylvania real property. No statutory exemption from the imposition of the tax is applicable nor may we create one.

Decree of the Orphans' Court reversed. Each party pay own costs.

POMEROY, J., filed a dissenting opinion, in which MANDERINO, J., joins.

POMEROY, Justice (dissenting).

The issue involved in this appeal is whether the transfer of the record title to real estate located in Pennsylvania, held by a non-resident decedent under a binding contract of sale entered into before the decedent's death, is subject to taxation under Section 212 of the Inheritance and Estate Tax Act of 1961 [hereinafter "the Act"], Act of June 15, 1961, P.L. 373, art. II, § 212, 72 P.S. § 2485–212. This in turn depends on whether such an interest is "real property" within the meaning of Section 102(17)(iv) of the Act, supra, 72 P.S. § 2485–

---

15. E. g., the doctrine of equitable conversion may apply: to transmit the property if seller or purchaser had died intestate, *Kerr v. Day*, 14 Pa. 112 (1850); to determine who bears the risk of loss until delivery of the deed, *DiDonato v. Reliance Standard Life Ins. Co.*, 433 Pa. 221, 249 A.2d 327 (1969).

102(17)(iv).[1] In an exhaustive opinion by Judge Simmons, the orphans' court division answered both questions in the negative. For the reasons which follow, I agree with the court below and therefore dissent from the Court's reversal of its decree.

Although the Court is no doubt correct in stating that the legislature is not bound by property law concepts in classifying property for the purposes of inheritance taxation, yet when the legislature employs property law terms in a tax statute without defining them it must be presumed that those terms are intended to have the meanings ascribed to them in the law of property. Accordingly, since the legislature did not define the term "real property" in the Act, I believe we must look to the law of property for its meaning.

It is a well-settled principle of property law that the execution of a contract for the sale of land works an "equitable conversion" of beneficial ownership of the property from the vendor to the vendee. *DiDonato v. Reliance Standard Life Insurance Company*, 433 Pa. 221, 249 A.2d 327 (1969) ; *Payne v. Clark*, 409 Pa. 557, 187 A.2d 769 (1963); *Kerr v. Day*, 14 Pa. 112 (1850) ; *Byrne v. Kanig*, 231 Pa.Super. 531, 332 A.2d 472 (1974). The operation and consequences of the doctrine of equitable conversion are succinctly set forth by a recognized authority on real estate law in this Commonwealth as follows:

> "The moment an agreement of sale is executed and delivered it vests in the vendee what is known as an equitable title to the real estate. Thereupon the vendor is considered to be a trustee of the real estate for

---

1. Section 102(17) of the Act defines property, the transfer of which is subject to tax. Clause (iv) of paragraph (17) is as follows:

 "All real property and all tangible personal property of a non-resident decedent or transferor having its situs in Pennsylvania, including such property held in trust; . . . .."

the purchaser who becomes a trustee of the balance of the purchase money for the vendor. As a consequence, the vendee has the right to go to a court of equity to enforce the terms of the agreement if violated by the vendor, and compel conveyance by the vendor to him.

\* \* \* \* \* \* \* \*

"This interpretation of an agreement of sale brings many consequences. Thus, since in equity the real estate belongs to the purchaser and the purchase money is the property of the vendor, the purchaser is entitled to the rents and the seller is entitled to interest on the purchase money (or the unpaid balance thereof) from the time fixed for completion of the transaction.

. . . [*I*]*t follows that after the agreement of sale is executed and delivered, if the buyer dies before settlement, his interest in the property descends as real estate.*"

\* \* \* \* \* \* \* \*

"*Conversely, upon execution and delivery of the agreement of sale, the vendor's interest becomes personal property and is to be administered as such,* although he (or his estate) is regarded as still holding the legal title to the real estate as security for payment of the purchase price." (Footnotes omitted; emphasis added).

Ladner, Conveyancing in Pennsylvania § 5.26 (3d ed. P. Wood 1961).

Since the execution of a binding and enforceable contract for the sale of land *ipso facto* strips the vendor of beneficial ownership of the property, I would hold that the transfer of his interest, which then consists merely of bare legal title for security purposes, is exempt from taxation under Section 312 of the Act, 72 P.S. § 2485-312. That section provides that "[p]roperty held in the name of a decedent who had no beneficial interest therein is exempt from inheritance tax." That being so, the

transfer is not taxable under Section 212 of the Act, 72 P.S. § 2485–212.

The vendor's rights under the contract of sale are not real estate as that term is used in Section 102(17)(iv) of the Act, supra, n. 1. If the purchase price for the property has been paid in whole or in part, the money received by the vendor is tangible personal property in his hands and is therefore taxable to the extent that the money is located in Pennsylvania.[2] See Sections 102(17)(i) and 102(17)(iv) of the Act, 72 P.S. § 2485–102(17)(iv). If, however, the purchase price has not been paid in full at the time of the vendor's death, his claim to the unpaid balance is a chose in action, an intangible, which is taxable only if the decedent is a resident of Pennsylvania at the time of his death. See Section 102(17)(ii) of the Act, 72 P.S. § 2485–102(17)(ii). In the instant case, what the Commonwealth is seeking to tax is purely and simply the transfer of the unpaid portion of the purchase price for real property. Since that chose in action belonged to a vendor who was a nonresident of Pennsylvania at the time of her death, it seems evident to me that its transfer is not subject to inheritance taxation by Pennsylvania under the Act of 1961, supra.

In reaching the contrary result, the Court relies on *Paul's Estate*, 303 Pa. 330, 154 A. 503 (1931). That case involved exactly the reverse of the situation presented by the case at bar. That is to say, whereas here the question is the taxability of the transfer of legal title to Pennsylvania land which a non-resident decedent had in her lifetime contracted to sell to another, the question in *Paul's Estate* was whether the death of a Pennsylvania resident occasioned a tax on the transfer of his legal title to foreign real estate which before his death he had contracted to sell. Recognizing that it is beyond the power

2. This would be so whether or not the decedent were a resident of Pennsylvania at the time of his death.

of Pennsylvania to tax real estate or a transfer of ownership in real estate which lies beyond its borders,[3] the Commonwealth was arguing in *Paul's Estate* that the transfer of legal title to New Jersey land was taxable because the doctrine of equitable conversion had divested the decedent's interest of its character as real property, thereby converting it to personalty. A majority of the Court held, the doctrine of equitable conversion notwithstanding, that the decedent's interest in the property had remained real property and therefore that its transfer was not subject to Pennsylvania inheritance taxation. All things being equal, *Paul's Estate* would be persuasive, although I believe erroneous,[4] authority for the result the Court reaches today. But all things are *not* equal, for by the Act of 1961, supra, the legislature expressly changed the rule announced in *Paul's Estate.*[5]

3. See *Frick v. Pennsylvania*, 268 U.S. 473, 45 S.Ct. 603, 69 L.Ed. 1058 (1925); *Robinson's Estate*, 285 Pa. 308, 132 A. 127 (1926).

4. In *Paul's Estate*, the Court said that "[t]he agreements of sale are not the vital factor," and that it was not prepared "to indulge in the make-believe that the land had been transmuted into something else." "Taxation", said the Court, "is a practical matter." 350 Pa. at 340, 154 A. at 504. To call equitable conversion "make believe", as did the majority in *Paul's Estate*, or a "fiction", as does the majority today, opinion of the Court, ante at 582 is in my view to ignore the realities of the situation. I agree entirely with the following observations of Mr. Justice Maxey, dissenting in *Paul's Estate:*

"[W]hen an owner of land, wheresoever that land is situated, sells it on a contract, retaining the bare title as security for the purchase money, he acquires from the legally enforceable contract a right of property distinct from the land to which it relates, this right of property being intangible personalty, sometimes called 'a solvent credit', sometimes called 'a chose in action', whose situs for taxation and other purposes is its owner's domicile. This property is not any 'make-believe' or legal fiction, but it is *an economic and legal fact.* 'Wealth in a commercial age is made up largely of promises': Pound's Introduction to the Philosophy of Law, page 236. Even a government bond or a greenback is only a promise but it is clearly taxable as property." 303 Pa. at 340, 154 A. at 506.

See also the dissenting opinion of Mr. Chief Justice Frazer, 303 Pa. at 355–56, 154 A. at 512.

5. Section 102(17)(iii) of the Act of 1961, *supra*, 72 P.S. § 2485–102(17)(iii), provides that "property" shall include "[a]ll real prop-

Nothing daunted, the Court reaches the jurisprudentially questionable conclusion that the decision in *Paul's Estate,* having been legislatively rendered inapplicable to its own facts, nevertheless governs the resolution of an issue which was not presented in that case, and which does not involve the danger, present in the *Paul's Estate* situation, that Pennsylvania may exceed its constitutional taxing authority.[6] In so concluding, the Court adopts a novel principle of construction for tax statutes, namely, that where there is doubt as to the intent of the legislature, it is presumed that the legislature intends to subject to inheritance tax every transfer not constitutionally immune from the tax.[7] Not only does this new rule of construction attribute to the legislature an avarice for which I can find no statutory basis, but it is inconsistent with the longstanding principle that tax statutes are to be strictly construed, with all reasonable doubt being resolved in favor of the taxpayer. Section 1928(b)(3) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1928(b)(3); *Estate of Rose,* 465 Pa. 53, 348 A.2d 113, 118 (1975).[8] As applied to the case before us, the

erty and all tangible personal property having its situs outside the Commonwealth, owned by a resident decedent, which the decedent had contracted to sell, provided the jurisdiction in which the property has its situs does not subject it to death tax . . . ." The Joint State Government Commission comment to this section states, "This changes existing case law: *Paul's Est.,* 303 Pa. 330, 154 A. 503." 72 P.S. § 2485–102, note at 211.

6. See the cases cited in note 3, *supra.*

7. " . . . the General Assembly intended to disavow this Court's rejection of equitable conversion only when the rejection of the doctrine resulted in an exemption from the tax. When, as here, our failure to apply the fiction results in imposition of the tax the legislative intent is accommodated." Opinion of the Court, *ante* at 582.

8. It is likely also that the approach of the majority to the interpretation of the Act of 1961 may run counter to the principle that tax statutes are to be construed where possible so as to avoid double taxation. See *Estate of Rose,* 465 Pa. 53, 348 A.2d 113, 118 (1975). As has been stated, Helen Highberger, the decedent here, was a domiciliary of New Jersey at the time of her death. Although it appears that New Jersey would not tax the

Court's new manner of construing tax statutes results in the unreasonable and unfair conclusion that the legislature intended the term real property to have different meanings depending upon whether the property is located within or without the Commonwealth of Pennsylvania.

I would affirm the decree of the orphans' court division.

MANDERINO, J., joins in this dissenting opinion.

inheritance of Mrs. Highberger's right to the unpaid balance of the purchase price, see C.C.H. Inheritance, Estate and Gift Tax Reporter, State 2, ¶ 1605, and therefore that the risk of double taxation is not present in this particular case, the rule the Court now adopts will apply to any non-resident decedent who holds legal title to Pennsylvania real property which he has contracted to sell. In states in which the decedent's contract right is viewed as an intangible as a result of the doctrine of equitable conversion and in which all intangibles owned by resident decedents are subjected to inheritance taxation, see note 14 of the opinion of the Court; *ante* at 582–583 the decedent's rights under the contract would be a taxable asset both in Pennsylvania and in the state of domicile.