Clifford I. BRAGMAN

v.

COMMONWEALTH LAND TITLE INSURANCE COMPANY.

Civ. A. No. 74–2979.

United States District Court,
E. D. Pennsylvania.

Oct. 18, 1976.

David H. Weinstein, Harold E. Kohn, P.A., Philadelphia, Pa., for plaintiff.

Seymour I. Toll, Toll & Ebby, Philadelphia, Pa., for defendant.

OPINION AND ORDER

EDWARD R. BECKER, District Judge.

I. *Preliminary Statement*

This is a suit on a policy of title insurance, which is now ripe for disposition on cross-motions for summary judgment. The parties have agreed to the essential facts and, after submission of exceptionally able briefs and oral argument, have left for our determination a most difficult case which turns on application of somewhat obscure principles of Pennsylvania real estate tax law.

The case is founded upon our diversity jurisdiction. Plaintiff, Clifford I. Bragman, a resident and citizen of Wisconsin, purchased real estate in Philadelphia, Pennsylvania, at sheriff's sale in December, 1972. Defendant, Commonwealth Land Title Insurance Company, a Pennsylvania corporation with its principal place of business in Philadelphia, issued a policy insuring plaintiff's title to the property in March, 1973, when plaintiff received the deed to the property from the sheriff. Plaintiff later paid $22,137.53 to remove a lien for 1973 real estate taxes which had attached to the

property on January 1, 1973, and was thus a lien at the time the deed was delivered and recorded and the title policy issued. Plaintiff brought this action to recover that sum plus interest, costs, and attorneys' fees from defendant, asserting that, there being no exception in the policy, he was insured against the lien for 1973 taxes by defendant's title policy.

Defendant contends that plaintiff is not entitled to summary judgment because the plaintiff suffered no insurable loss by paying taxes which are, in defendant's view, a normal incident of ownership of property. Defendant asserts that because plaintiff is a sophisticated real estate investor he is charged with cognizance of such matters; and that because plaintiff was bound to anticipate payment of the taxes, any recovery by him would be a windfall. Defendant also maintains that we should grant its motion for summary judgment because plaintiff was the equitable owner of the property on January 1, 1973, the time the real estate taxes in question were assessed and became a lien on the property and as such was liable for the taxes. If so, defendant submits that the lien is not covered by (or is automatically excepted, as it were) from the policy. Defendant also claims that a line of cases holding both the straw party title holder and the real party in interest liable for the payment of real estate taxes requires judgment in its favor.

Undoubtedly, had the defendant excepted the taxes from the title report and policy, it would be freed of liability as a matter of contract. Nor is there any doubt that plaintiff became the real owner of the property on March 3, 1973, and that the bulk of the taxes for which he asserts a claim under the policy cover portions of the year when he was owner in every sense of the word. Because of this fact, a verdict for the plaintiff in the full amount claimed would create an inequitable result. Moreover, it is extremely likely that had the transaction at issue been a conventional purchase and sale (instead of a sheriff's sale) the usual Philadelphia custom of tax apportionment would have prevailed and plaintiff would have at least had to bear the burden of that portion of the taxes represented by the period of his 1973 real ownership. Such apportionment would be the most equitable result. However, cases at law do not always conclude equitably, as this one regrettably does not. For, as will appear from our discussion: (1) under Pennsylvania law the purchaser at a sheriff's sale is not the owner until he receives the deed; (2) it is the owner of the property on the date the taxes are assessed who is liable for payment of the taxes for the entire year; and (3) the inexorable application of these principles of Pennsylvania real estate law and the corollaries which flow therefrom require us to deny defendant's motion for summary judgment and to grant plaintiff's.

## II. The Uncontested Facts

The following are the relevant undisputed facts.[1]

On December 4, 1972, plaintiff came to Philadelphia to attend the sheriff's sale (pursuant to mortgage foreclosure) of a parcel known as 1742–48 Market Street, Philadelphia, Pennsylvania. Plaintiff was the successful bidder. After purchasing the property at the sale, plaintiff obtained local counsel to represent him. On December 28, 1972, through counsel, plaintiff paid to defendant, as the agent for the sheriff, the balance of the bid price. At the same time he also paid defendant for a policy of title insurance on the property, which defendant agreed to issue upon recordation of the sheriff's deed.[2] However, because of certain litigation in state court, involving the

1. The record on summary judgment includes (1) the pleadings; (2) a formal stipulation of facts with attached documents including the sheriff's deed, the title report, the settlement sheet, and the title insurance policy; (3) defendant's answers to interrogatories; (4) plaintiff's deposition; and (5) the affidavits of plaintiff's attorneys and of two executives of defendant.

2. The settlement sheet bears a December 28, 1972 date, though it is probable that the figures were closed on March 9, 1973, when the deed was delivered.

validity of the sheriff's sale, the sheriff did not deliver the deed to plaintiff until March 9, 1973. The deed was recorded on that day. About 20 days later, defendant delivered a title insurance policy, dated March 9, 1973, to plaintiff.

The relevant portions of the policy (the insuring agreements and exclusions from coverage) read as follows:

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS CONTAINED IN SCHEDULE B AND THE PROVISIONS, THE CONDITIONS AND STIPULATIONS HEREOF, COMMONWEALTH LAND TITLE INSURANCE COMPANY, . . . herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the amount of insurance stated in Schedule A, and costs, attorneys' fees and expenses which the company may become obligated to pay hereunder, sustained or incurred by the insured by reason of:

. . . . .

2. Any defect in or lien or encumbrance on such title;

EXCLUSIONS FROM COVERAGE

. . . . .

3. . . . liens, . . . (a) created, suffered, assumed, or agreed to by the insured claimant; . . . (c) resulting in no loss or damage to the insured claimant; . . .

The date of policy as shown in Schedule A is also March 9, 1973, and neither the lien for nor the 1973 real estate taxes are listed as an exception in Schedule B of the policy.

In August, 1973, plaintiff received a notice of delinquent 1973 real estate taxes. The 1973 taxes totalled $22,012.53 and penalty of $440.25 had already accrued. Plaintiff paid the taxes, though he petitioned and obtained from the City of Philadelphia Tax Review Board a waiver of interest and penalty. Plaintiff incurred costs and attorney's fees of $125.00 in obtaining the waiv-

er. Plaintiff thereupon demanded reimbursement from defendant. After defendant refused to pay him, plaintiff brought this action seeking reimbursement for the taxes as well as the costs and attorney's fees incurred in obtaining the waiver of interest and penalty, a total of $22,137.53.

Defendant admitted in its answer to the complaint that the tax lien existed on the property on March 9, 1973, the date on which the policy was issued. It also stated, in response to an interrogatory, that it had constructive knowledge of the lien on January 1, 1973. The parties have stipulated, however, that the lien was not of record on March 9, 1973.[3]

III. *Discussion*

■ Resolution of the dispute before us requires that we first address a threshold question—whether, under Pennsylvania law, the purchaser of real property at sheriff's sale is personally liable for the payment of real estate taxes which are assessed prior to the time that he receives the deed to the property from the sheriff. *Pennsylvania Co. v. Pannonia Bldg. Ass'n*, 29 D. & C. 194 (M.C.Phila.1937), which we believe to correctly state Pennsylvania law, holds that he is not.

In *Pannonia*, the defendant purchased the property in question at a sheriff's sale in November 1931. In late January 1932, the sheriff acknowledged the deed to the property to the defendant. In November 1932, the plaintiff purchased the property at a second sheriff's sale and paid the 1932 real estate taxes. Plaintiff sued to recover the amount it paid in taxes from the defendant, asserting that the defendant was personally liable for payment of the taxes, which had been assessed on January 1, 1932. The court held that defendant, who had not received the deed on January 1, 1932, was not the real owner of the property, but rather only had an "inceptive interest" in the property prior to receipt of the deed. Concomitantly, the court found that under

---

**3.** In Philadelphia, taxes are assessed as of January 1st for the calendar year. Payment of taxes may be made without interest or penalty up until May 31st; thereafter, penalty and interest charges begin to accrue.

Pennsylvania law, the debtor-owner, not the holder of the inceptive interest, held the incidents of real ownership until the deed was acknowledged:

> The debtor-owner, not the successful bidder, is entitled to possession of the premises until the deed is acknowledged and delivered: *Garrett v. Dewart*, [43 Pa. 342]; the debtor-owner is entitled to the moneys paid by an insurance company because of a fire on the premises between the dates of the sheriff's sale and of the acknowledgment of the deed: *Collins, to use, v. London Assurance Corp.*, [165 Pa. 298]; the purchaser does not become entitled to the rents, as owner and in his own right, until the acknowledgment of the deed: *Provident Trust Co. v. Judicial B. & L. Assn. et al.*, 112 Pa.Superior Ct. 352 [171 A. 287].

29 D. & C. at 197.

The *Pannonia* court's conclusion was that the obligation to pay real estate taxes flows with the rights to possession and income, which remained in the debtor-owner until the delivery of the deed. Thus, the owner prior to the defendant, not the defendant, was personally liable for the 1932 taxes. The plaintiff's arguments to the contrary in *Pannonia* were the same as the ones made by the defendant here. First, the plaintiff analogized two cases in which the courts had found the straw party title holder and the beneficial owner both to be personally liable. The *Pannonia* court rejected this argument because the basis upon which the courts found dual liability in those cases was that the straw party and the beneficial owner had parallel interests and were in substance one party. The same is not true of a purchaser at sheriff's sale and the debtor-owner. Their interests may in fact be in conflict.

The second argument of the plaintiff in *Pannonia* was that the doctrine of equitable conversion applied, and that therefore the purchaser became personally liable for taxes assessed after the purchase. The court looked to the origins of that doctrine, however, and found that it was based on the implied mutual intent of the owner-seller and the buyer. In the sheriff's sale situation, the buyer and the owner never meet, and thus, it is impossible to find even implied mutual intent. The court therefore concluded that the doctrine of equitable conversion was inapplicable.[4] Cf. *Schmid's Estate*, 182 Pa. 267, 37 A. 928 (1897).

Defendant does not distinguish *Pannonia*, but rather in effect asserts that *Pennsylvania Co. v. Broad Street Hosp.*, 354 Pa. 123, 47 A.2d 281 (1946), changed the law of Pennsylvania. That case, however, dealt with an entirely different issue—whether a foreclosed mortgagor may redeem his property after the sheriff's sale. The court held that he could not, because the purchaser gained an inceptive interest in the property. The court did not rely upon the doctrine of equitable conversion, and in fact cited with approval at least one case relied on by the *Pannonia* court. See *Collins v. London Assurance Corp.*, 165 Pa. 298, 30 A. 924, 925 (1895) (foreclosed owner was lawfully in possession of property after sheriff's sale and prior to the delivery of the deed).

In view of the inapplicability of *Broad Street Hospital*, defendant's reliance upon it does not impel us to find that *Pannonia* is no longer good law. *Pannonia* is the only Pennsylvania case considering the present issue. While it is the decision of a *nisi prius* judge, hence not controlling in this diversity case, we find it persuasive.[5]

Having determined that plaintiff was not the equitable owner of the property on Jan-

---

4. The equitable ownership cases cited by defendant, *Gheen v. Harris*, 170 Pa. 644, 32 A. 1094 (1895); *City of Philadelphia v. Myers*, 102 Pa.Super. 424, 157 A. 13 (1931), both involved agreements of sale.

5. *Cf.* the recent decision of the Pennsylvania Supreme Court in *Highberger's Estate*, 360 A.2d 580 (1976), in which the court held that real estate in Pennsylvania owned by a non-resident and subject to an agreement of sale at the time of the owner's death remains real property for the purposes of the Pennsylvania inheritance tax. The court reasoned that the real property doctrine of equitable conversion does not apply to interpretation of tax statutes, absent legislative intent to so limit the scope of the tax.

uary 1, 1973, when the taxes were assessed, and that the straw party title holder cases are inapplicable, we must deny defendant's motion for summary judgment. We turn to plaintiff's argument in favor of granting his motion. The argument is quite simple. Plaintiff asserts that he suffered a loss of $22,137.53, because he had to pay that sum to remove a lien for taxes which he was not personally liable to pay. The insuring agreements of defendant's policy insure against, *inter alia*, any defect on or lien or encumbrance on the title, and plaintiff contends that he is thus insured against this loss. Defendant rejoins with several counterarguments.

First, defendant contends that plaintiff has not established that he suffered a loss, only that he paid the taxes.[6] Defendant also argues that payment of taxes cannot be a loss because such payment is a normal expense of ownership, and that plaintiff admitted this fact by taking an expense deduction, not a loss, on his federal income tax return for the payments. We think, however, that plaintiff has shown more than the fact that he paid the taxes. He has shown that, as a matter of law, he paid taxes that he was not personally liable for in order to remove a lien on his property. A tax lien is, of course, within the ambit of defendant's insuring agreements. We do not see how such a payment cannot constitute a loss to the plaintiff unless we denude the term "loss" of meaning or construe it tortuously. Plaintiff was, of course, fortunate to have the benefit of the rule announced in *Pannonia* in light of the delay in delivery of the deed.

Defendant might have deprived him of this advantage when it delivered the policy by excepting the 1973 taxes, since the policy forms the contract between the parties. The title report was issued in December, 1972, before the 1973 taxes had been assessed, hence the title report did not show them. However, defendant admits that it had constructive knowledge of the lien and thus it could have excepted them in a "bring down" of the report and/or on the policy which, as we have noted, is the operative document forming the basis for this action.[7] Because they did not, when plaintiff had to pay the taxes to protect his property, the benefit thus conferred was lost, and he suffered a loss.[8] To pose the dilemma *in extremis*, if a person wins a sum of money in a dice game or a casino, we do not say that he has not suffered a loss if that money is stolen from him as he is exiting or if it is destroyed in an accident or fire.[9]

Defendant next contends that plaintiff "suffered and assumed" the liability for taxes on the property by purchasing it, and thus plaintiff's claim falls within one of the exceptions of the policy. Defendant does not thereby raise any issue of material fact

---

**6.** *Inter alia*, defendant frames this argument in terms of the title policy's exclusion from coverage of liens which result in "no loss or damage to the insured claimant." The burden of establishing exclusion from coverage rests with the insurance company. *Daburlos v. Commercial Ins. Co. of Newark, N. J.*, 521 F.2d 18 (3d Cir. 1975).

**7.** A different question would have been presented had defendant excepted the taxes from the policy and plaintiff complained that they should not have been. We need not address that question here.

**8.** The plaintiff has argued that he could not have been aware before or even at the time the policy was issued of the boilerplate "loss" exclusion on which the defendant relies (he did not receive the policy instrument until March 29, 20 days after it was effective). Defendant has countered with affidavits which, *inter alia*,

state that (1) when the application for title insurance was received, the defendant sent to plaintiff's counsel a commitment which bore, in bold face, the words: "Company will issue its current ALTA policy of title insurance with respect to the premises on endorsed hereon . . . ."; and (2) that the standard ALTA policy has at all times contained the no loss exclusion. Defendant argues that plaintiff was therefore on notice of the exclusion when his application was received in December 1972. We believe that defendant's response neutralizes this contention of plaintiff.

**9.** We find plaintiff's income tax treatment of his payment irrelevant. What may be an expense for purposes of income tax may also be a loss within the meaning of an insurance contract, and unfortunately for defendant, we are interpreting an insurance contract.

which would prevent us from granting summary judgment. It merely reasserts its claim that plaintiff was personally liable for the taxes and therefore "suffered and assumed" the liability when he purchased the property. Since we have already decided this legal issue against the defendant, it follows that we must reject this argument.

We also do not find a genuine issue of material fact as to the amount of the loss. The parties have stipulated that:

> If Commonwealth is liable to Bragman on his Complaint, damages are in the amount of $22,137.53; plus interest (1) on $15,000 from December 28, 1973, to date, and (2) on $7,012.53 from March 21, 1974, to date, plus costs and fees as allowed by the Court.[10]

## IV. *Conclusion*

In view of the foregoing analysis, defendant's motion for summary judgment must be denied and plaintiff's motion for summary judgment must be granted. We recognize that this result means that plaintiff received the benefit of the use of the property for nine months of the year without having to pay any real estate taxes. However, as we have indicated in the body of this opinion, this outcome follows from two rules of Pennsylvania real estate law: (1) the owner of the property on the date taxes are assessed is liable for payment of the taxes for the entire year; and (2) the purchaser at a sheriff's sale is not the owner until he receives the deed. Defendant could have protected itself against this result by making an exception on the policy, but did not. Neither is there anything in the "contract" between the parties for the title policy which, by way of contract construction, changes the result, for the "contract" is now merged in the policy sued upon. While we feel some discomfiture over the outcome (and would have much preferred to be in position to apportion the taxes between plaintiff and defendant as of

the date of delivery of the deed), our order denying defendant's motion for summary judgment, granting plaintiff's motion for summary judgment, and entering judgment in favor of plaintiff in the amount of $22,-137.53, plus interest, must and does follow.

---

10. Stipulation of Facts, paragraph 6. The parties thus have stipulated that plaintiff's damages, in the event of a verdict in his favor, should include the $125 in counsel fees and costs he incurred in obtaining a waiver of interest and penalty. They have also therein stipulated that if the defendant is liable to the plaintiff damages include "costs and fees as allowed by the Court." However, no other costs or fees have been proved.