J-A33014-13

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SCOTT SNYDER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GEORGE M. THOMAS III, EXECUTOR OF THE ESTATE OF GEORGE M. THOMAS, JR., ALSO KNOWN AS GEORGE THOMAS DECEASED, AND GEORGE M. THOMAS III, EXECUTOR OF THE ESTATE OF DOROTHY L. THOMAS, DECEASED | |
| Appellant | No. 407 WDA 2013 |

Appeal from the Order February 13, 2013
In the Court of Common Pleas of Lawrence County
Civil Division at No(s): 11091 of 2010, c.a.

BEFORE:  PANELLA, J., ALLEN, J.,[•] and STRASSBURGER, J.[*]

MEMORANDUM BY PANELLA, J.                    **FILED NOVEMBER 16, 2015**

Appellant, George M. Thomas III, Executor of the Estates of George M. Thomas, Jr., and Dorothy L. Thomas, appeals from the order entered February 13, 2013, in the Court of Common Pleas of Lawrence County, which denied Appellant's motion for a new trial.   We affirm.

This case arises out of an Agreement of Sale for property situated at 224 State Route 956 in Slippery Rock, Pennsylvania ("the property"). George Thomas, Jr. and his wife, Dorothy Thomas (collectively, "Sellers"),

---

[•] Judge Allen did not participate in the consideration or decision of this case.
[*] Retired Senior Judge assigned to the Superior Court.

now both deceased, owned the property in question. Appellee, Scott Snyder, entered into an oral leasing agreement with Sellers from 2007-2010, in which Snyder agreed to pay $50.00 per acre to cultivate 65 acres of the property. In February 2010, the Sellers contacted Snyder and indicated their interest in selling the property. The parties met at the Sellers' residence to discuss the transaction and Mr. Thomas offered to sell the property for $350,000.00, if he and his wife retained the right to live in the farmhouse for the remainder of their lives, or so long as they chose to remain. Snyder requested some time to think about the offer.

Shortly thereafter, Snyder contacted Attorney Robert Clark of Wilmington, Pennsylvania, to draw up a contract proposing a counter offer to the Sellers' proposal. Attorney Clark had previously represented Sellers on four occasions from 2005 to 2009. In 2007, Attorney Clark had declined to represent Sellers regarding a rental dispute with a tenant Attorney Clark had represented in a prior matter. Based on this history of prior representation the Sellers regarded Attorney Clark as their "family attorney."

Despite a history of representing the Sellers, Attorney Clark proceeded to represent Snyder regarding the sale of the property. It is undisputed that neither Attorney Clark nor Snyder communicated to Sellers that Attorney Clark was solely representing Snyder. Attorney Clark drafted an Installment Agreement of Sale on behalf of Snyder, which reduced the sale price proposed by Sellers. Sellers ultimately objected to the installment agreement and insisted upon the original $350,000.00 purchase price paid in

a single lump sum. Snyder agreed to pay the lump sum amount, in return for which Sellers allegedly agreed to pay a monthly rent to remain in the farmhouse situated on the property. Thereafter, Attorney Clark drafted a new Agreement of Sale on Snyder's behalf reflecting the parties' agreement.

On April 29, 2010, the parties met in Attorney Clark's office to discuss the new Agreement of Sale. The agreement drafted by Attorney Clark provided for the transfer of the property for the lump sum of $350,000.00, to be paid in full at closing with no money down. Agreement of Sale, 4/29/10 at 1-2.[1] The agreement provided that Sellers would enter into a leasing agreement with Snyder whereby they would rent the farmhouse for $250.00 per month, plus utilities. *Id*. at 5. The Agreement of Sale further set forth that Snyder would take title to the property subject to "[p]rior grants, reservations, or leases as shown by instruments of record (example: coal, oil, gas, other minerals, etc.)[.]" *Id*. at 4. In the event of Sellers' default, the agreement stipulated "Buyer shall have the right to sue for specific performance or money damages and in such event, Buyer shall be entitled to recovery of h[i]s/her attorney's fees." *Id*. at 2.

---

[1] The Agreement of Sale for the property is titled as an "Installment Agreement of Sale." As noted, however, the Sellers ultimately rejected Snyder's counter offer in the form of an installment agreement. Therefore, we refer to the sales agreement for the property merely as the "Agreement of Sale."

The parties differ as to the extent Attorney Clark explained the Agreement of Sale to the Sellers at the April 29, 2010, meeting. Afterwards, Attorney Clark informed Sellers that they had the right to have the agreement independently reviewed, which they declined to do. The parties proceeded to sign the agreement of sale in Attorney Clark's office.

At the time the parties signed the agreement, Snyder was aware of an existing gas lease on the property for which the Sellers were paid $1,000.00 per year. It is undisputed that any transfer of the existing gas lease was never related to Attorney Clark, nor did Attorney Clark independently discover the existing gas lease prior to drafting the final agreement.

On May 27, 2010, Sellers entered into a new gas lease with East Coast Resources, LLC, for which they were to receive $176,000.00 in advanced royalties. On June 1, 2010, Sellers informed Snyder of their intent to rescind the Agreement of Sale. Having obtained the necessary financing, Snyder informed Sellers that he was ready and willing to proceed to closing scheduled for June 18, 2010. Sellers failed to attend the closing or accept the $350,000.00.

Snyder initiated the instant action by way of Complaint filed July 20, 2010. In an Amended Complaint filed December 20, 2010, Snyder sought: 1) specific performance of the Agreement of Sale; 2) assignment of the gas lease between Sellers and East Coast Resources, LLC; 3) damages in the amount of $176,000.00, reflecting the advance royalties Sellers received pursuant to the new gas lease; and 4) attorney's fees and costs. Sellers filed

an Answer and counter-claim seeking damages for Snyder's failure to pay rent pursuant to the lease of the property for the year 2010.

Following a non-jury trial on October 9, 2012, the trial court entered an order which granted Snyder's request for specific performance of the Agreement of Sale, granted a reduction in the purchase price of the property in the amount of $176,000.00 as an offset to the amount of advanced royalties paid to Sellers by East Coast Resources, LLC, granted Snyder's request for transfer of the East Coast Resources, LLC, gas lease, and awarded attorney's fees and costs. The trial court denied Sellers' counter-claim. On December 7, 2012, Sellers filed post-trial motions seeking judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court denied Sellers' post-trial motions on February 13, 2013. Appellant thereafter filed a timely appeal to this Court.[2]

On appeal, Appellant raised the following issues for our review.

I. Whether the role of Attorney Robert Clark, whom the aged and infirm Sellers, Mr. and Mrs. Thomas, regarded as their family attorney, who drafted all copies of the Agreement of Sale and conducted the meeting where the Agreement was purportedly executed, and who did not disclose to them his unilateral representation of the Buyer, Scott Snyder, in this transaction when he knew that Sellers were not represented, causes the sales contract to be inequitable,

_____

[2] George Thomas, Jr., died testate on January 20, 2011. His wife, Dorothy Thomas, died testate on December 18, 2012. In both instances, the Sellers' son, George Thomas III, substituted his appearance for the parties as executor of the estates.

unjust and/or unconscionable and, therefore, unenforceable.

II.     Whether the provision in the Agreement regarding Sellers continuing lease of the farm house as their residence, whose occupancy Sellers wanted to ensure for "the rest of their lives", but which the Agreement expressed only a "month to month" lease, was a mistake which cannot be modified by parol evidence, and thereby causing the sales contract to be unenforceable.

III.    Whether the [c]ourt erred in failing to address the issue of Mr. Snyder's "unclean hands" in the Opinion and adjudication of Post-Trial Motions, which issue Sellers raised as an affirmative defense in their New Matter to Plaintiff's Complaint, in their [P]re-Trial Statement, and in their Post-Trial Motions.

IV.     Whether the [c]ourt erred in holding that the Agreement of Sale transferred the oil and gas rights to the property.

V.      Whether the contact by East Resources, Inc. to renew the oil and gas lease on the property with payment of a substantial advance royalty very shortly after the Agreement of Sale for the realty is a matter subsequently occurring that renders this transaction inequitable or unjust, and the agreement of sale unenforceable.

VI.     Whether the [c]ourt abused its discretion in granting equitable relief to Mr. Snyder in disregard of and contrary to the weight of the evidence, and to the applicable law, for:

        a. Specific performance, assignment of the lease, and payment of the advance royalty.

        b. Assigning to [Buyer] as a credit against the purchase price to [Sellers] the amount paid as an advance royalty for the renewal of the oil and gas rights to the property.

Appellant's Brief at 6.

    After reviewing the record, a panel of this Court issued a memorandum opinion reversing the trial court's order denying Sellers'

motion for a new trial and remanding for further proceedings on the parties' remedy in damages. **Snyder v. Thomas**, 102 A.3d 527 (Pa. Super., filed April 9, 2014) (unpublished memorandum) (STRASSBURGER, J., concurring in result). Specifically, this Court determined that the trial court's findings were not supported by the record and that the equities did not lie in favor of enforcing specific performance. Thereafter, Snyder sought discretionary review with the Pennsylvania Supreme Court.

On January 23, 2015, the Supreme Court issued a *per curiam* order granting allowance of appeal and vacating this Court's order "in light of its failure to credit the trial court's factual findings, which are supported by the record." **Snyder v. Thomas**, 108 A.3d 1276 (Pa. 2015) (SAYLOR, J., and TODD, J., dissenting), citing **Fizzano Brothers Concrete Products, Inc. v. XLN, Inc.,** 42 A.3d 951, 970–74 (Pa. 2012). The Supreme Court's order further remanded the case to this Court "for consideration of the other issues not addressed in respondent's original appeal." **Id**. In light of the Supreme Court's directive, we will now proceed to examine Appellant's issues raised on appeal.

"Our standard of review from an order denying a motion for a new trial is whether the trial court committed an error of law, which controlled the outcome of the case, or committed an abuse of discretion." **Polett v. Public Communications, Inc.**, 83 A.3d 205, 214 (Pa. Super. 2013) (citation omitted), *reversed on other grounds*, ___ A.3d ___, 2015 WL 6472419 (Pa., filed October 27, 2015). "A trial court commits an abuse of

discretion when it rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." ***Id***. (citation omitted).

> The [trial] court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence. Conclusions of law, however, are not binding on an appellate court, whose duty it is to determine whether there was a proper application of law to fact by the [trial] court. With regard to such matters, our scope of review is plenary as it is with any review of questions of law.

***Zuk v. Zuk***, 55 A.3d 102, 106 (Pa. Super. 2012) (citation omitted).

We note that specific performance is an equitable action. ***PNC Bank, Nat. Ass'n v. Bluestream Technology, Inc.***, 14 A.3d 831, 839 (Pa. Super. 2010). "Specific performance in the conveyance of real property is not a matter of right but of grace and will not be granted unless the party seeking the relief is clearly entitled to it." ***Delaware River Preservation Co., Inc. v. Miskin***, 923 A.2d 1177, 1182 (Pa. Super. 2007) (citation omitted).

> A court of equity should refrain from ordering specific performance where it appears that hardship or injustice will result to either of the parties. The word "hardship," however, does not encompass every disappointment and economic detriment to which a party has exposed himself by signing an agreement. Equity cannot contract for the parties. It is only where circumstances come to light which so shock the concept of fairness and justice that it would be unconscionable to enforce the bargain that Equity intervenes.

**Snyder v. Bowen**, 518 A.2d 558, 562 (Pa. Super. 1986) (internal citations and quotes omitted).

> Although relief in equity is a matter of grace only and not of right, and rests in the discretion of the court, to be exercised upon a consideration of all the circumstances of the case, it does not follow that a decree for specific performance must be entered in all cases where the agreement is legally sound and the price adequate, but if the transaction be inequitable or unjust in itself or rendered so by matters subsequently occurring, specific performance may be denied and the parties turned over to their remedy in damages….

**Snow v. Corsica**, 329 A.2d 887, 889 (Pa. 1974).

In its memorandum opinion filed November 30, 2012, the trial court noted the following determinations of fact and law: (1) that the Sellers had legal capacity to contract, and exhibited no ailments or other incapacity that would warrant rescission of the contract; (2) that the parties travelled to Attorney Clark's office on April 29, 2010, with the aim to negotiate the Agreement of Sale and not, as Mr. Thomas had claimed, solely to discuss the rental of the farmhouse; (3) that all parties signed the agreement in each other's company; and (4) that there was a meeting of the minds as to both the lease provision and the transfer of mineral rights to Snyder in the Agreement of Sale. Trial Court Opinion, 11/30/12 at 14-17.

In concluding that the equities in this matter lie with specific performance, the trial court reasoned as follows.

> Attorney Clark represented [Sellers] in four varying matters, beginning in 2005 and ending in late 2009. It is uncontroverted that Clark never disclosed to [Sellers] that he was not representing them in the instant matter, and that [Sellers]

viewed him as their "family attorney." These factors, then, would seemingly make [Sellers] ripe to be fooled into agreeing to terms unilaterally favoring [Appellee Snyder]. The credible evidence, however, indicates that this is not the case. Attorney Clark's representation of [Snyder] can hardly be characterized as the type of zealous advocacy that most typically conjure when defining the role of an attorney: he was simply a legal means to finalizing the terms that the parties themselves agreed upon.

Trial Court Opinion, 11/30/12 at 19. The court concluded that [Snyder] used Clark's services as a mere "means to an end," not as a shrewd negotiator to secure a better deal for himself…." *Id*.

We have reviewed the record, the factual determinations of the trial court, and the legal conclusions drawn therefrom. In light of the Supreme Court's express directive that the trial court's factual findings are supported by the record, we have determined that the Honorable John W. Hodge's opinions filed November 30, 2012, and March 26, 2013,[3] ably and comprehensively dispose of Appellant's issues raised on appeal, with appropriate reference to the record and without legal error. Accordingly, we will affirm on the basis of those opinions.

Order affirmed. In the event of further proceedings, the parties are directed to attach a copy of the trial court opinions. Jurisdiction relinquished.

_____

[3] In its Rule 1925(a) opinion filed March 26, 2013, the trial court expressly reaffirmed the prior opinion filed November 30, 2012, and incorporated that opinion by reference. We further note that in the 1925(a) opinion, the trial court expressly determined that Sellers' unclean hands defense was without merit based upon its finding that the April 29, 2010, Agreement of Sale was not inequitable or unjust.

Judge Strassburger joins the memorandum.

Judge Allen did not participate in the consideration or decision of this case.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/16/2015</u>

SCOTT SNYDER,                           : IN THE COURT OF COMMON PLEAS
                                        :
            PLAINTIFF                   : LAWRENCE COUNTY, PENNSYLVANIA
                                        :
vs.                                     : NO. 11091 of 2010, C.A.
                                        :
GEORGE M. THOMAS, III,                  :
Executor of the Estate of              :
GEORGE M. THOMAS, JR., and             :
DOROTHY THOMAS,                         :
                                        :
            DEFENDANTS                   :

## ORDER OF COURT

AND NOW, this 26th day of March, 2013, with the Court receiving Defendants' Concise Statement of Errors complained of on appeal, and after reviewing the same, the Court hereby ORDERS and DECREES as follows:

1.  The Court is satisfied that the issues raised in Defendants' Concise Statement of Errors have been adequately addressed in this Court's November 29, 2012 Opinion.

2.  To the extent that Defendants assert that this Court failed to address the issue of Plaintiff's unclean hands in its Opinion and subsequent Orders of Court the Court finds as follows:

    a.  Paragraph 81 of Defendants' Amended Answer, New Matter and Counterclaim raises the Doctrine of Unclean Hands as a general defense to Plaintiff's request for equitable relief.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL
2013 MAR 26 A 11: 59
HELEN I. MORG...

b. The Court's finding that the Contract entered into by the parties on April 29, 2010 was not inequitable nor unjust renders Defendants' defense of Unclean Hands irrelevant and inapplicable to these proceedings.

c. Defendants' defense by way of the Doctrine of Unclean Hands is therefore DENIED,

3. The Court reaffirms the November 29, 2012 Opinion entered in the above captioned case, and incorporates the same as though fully set forth herein.

4. The Prothonotary of Lawrence County is directed to immediately assemble the record and transmit said record to the Superior Court of Pennsylvania as required by the applicable Rules of Appellate Procedure.

5. The Prothonotary shall properly serve notice of this Order of Court upon counsel of record for the parties.

BY THE COURT:

John W. Hodge, Judge      J.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINA

2013 MAR 26 A II: 59

HELEN I. MORGA

SCOTT SNYDER,      : IN THE COURT OF COMMON PLEAS

     Plaintiff    : LAWRENCE COUNTY, PENNSYLVANIA

vs.          : NO. 11091 of 2010, C.A.

GEORGE M. THOMAS, III,   :
Executor of the Estate of
GEORGE M. THOMAS, JR., and  :
DOROTHY THOMAS,

           :
     Defendants

APPEARANCES

For the Plaintiff:   Phillip L. Clark, Jr., Esquire
           Balph, Nicolls, Mitsos, Flannery & Clark
           Suite 300, Huntington Bank Building
           14 North Mercer Street
           New Castle, PA 16101

For the Defendants:   Bradley S. Dornish, Esquire
           Charles C. Bell, Esquire
           Dornish Law Offices, P.C.
           1207 Firth Avenue, Suite 300
           Pittsburgh, PA 15219

OPINION

Hodge, J.           November 29, 2012

This matter derives from an April 29, 2010 Agreement of Sale[1] (hereinafter, the "Agreement") between the Defendants, George Thomas, Jr. and his wife Dorothy Thomas ("Defendants"[2]), and the Plaintiff, Scott Snyder ("Plaintiff"), providing for the transfer of the Thomas property, situated at 224 State Route 956

---

[1] Though the final April 29, 2012 Agreement was actually termed "Installment Agreement of Sale," it was not an installment contract, as payment was due in full at closing. As such, the Court will reference the April 29, 2012 contract as the "Agreement" in order to avoid confusion with Plaintiff's preceding April 23, 2010 proposal, wherein Plaintiff did offer to pay in three annual installments.

[2] As George Thomas, Jr. died testate on January 12, 2012, and his wife Dorothy has since moved into an assisted living facility, their son George Thomas, III has been substituted as the Defendant in this action. Thomas, III is the Executor of his parents' estate.

FILED/ORIGINAL

2012 NOV 30 A 8: 23

HELEN L. MORGAN


53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

in Slippery Rock, Pennsylvania ("the Property"), in exchange for the sum of $350,000.00. The Agreement was assented to in the office of Attorney Robert Clark,[3] and it is from the unusual set of circumstances both precedent and subsequent to said transaction that much of this litigation involves. Shortly after the Agreement, Defendants signed a gas leasing contract with East Coast Resources, LLC, which paid them advanced royalties in the amount of $176,000.00. Several days later, Defendants sent Plaintiff a letter detailing their intent to rescind the contract. After Plaintiff replied that he was ready and willing to pay in-full at closing, Defendants stood by their aforementioned intent. Plaintiff then initiated the instant legal action,[4] requesting the following relief:

1. Specific performance of the Agreement;

2. An assignment of the gas lease between Defendants and East Coast Resources, LLC;

3. A reduction of the purchase price of the Property, or, alternatively, damages, in the amount of $176,000.00, that sum representing the amount of advanced royalties paid to Defendants by East Coast Resources, LLC, and;

4. Attorney's fees and costs, as per the Agreement of Sale.

In defense to Plaintiff's Amended Complaint, Defendants assert that:

1. The Agreement is void because there was no meeting of the minds as to two material terms, namely the transfer of mineral rights and Defendants' right to continue to live in the farmhouse located on the Property after closing, and;

---

[3] Attorney Robert Clark is not related to Attorney Phillip Clark, Plaintiff's counsel in this matter.

[4] The initial Complaint was filed on July 20, 2010, but was later amended on December 20, 2010 to include the abovementioned requested relief. Plaintiff also filed a *lis pendens* against the Property with the Lawrence County Prothonotary.

FILED/ORIGINAL

2012 NOV 30 A 8: 23

HELEN I. MORGAN
PRO AND CLERK

2. The inequitable and unjust nature of the Agreement's formation precludes specific performance.

Defendants also pray for damages in the amount of $3,250.00, plus interest at the legal rate of 6%, for Plaintiff's failure to pay for his 2010 leasing of 65 acres of the Property for farming.

A. **Facts**

The facts that follow are gathered from a comprehensive review of both the case file and the nonjury trial held before this Court on October 9, 2012.[5]

Defendants acquired the Property at the heart of this dispute in 1955. Consummated in 1946, their marriage produced two children and five grandchildren. After serving his country during World War II, George Thomas worked in several different careers before a collapsed lung forced him into retirement in 1987, when he started a saw sharpening business. Mr. Thomas continued to run the business until its eventual sale in the fall of 2009. Dorothy Thomas worked as a secretary in Pittsburgh, Pennsylvania for approximately five years, when the couple's first child was born; thereafter providing for the family as a homemaker and keeping the books for the business. Their son, George Thomas, III, has lived on an approximately two-acre parcel of land abutting the Property since 1999.

Plaintiff lives with his wife and two sons in Volant, Pennsylvania; roughly 1.5 miles away from the Thomas Property. He obtained a degree in Animal Husbandry from the Pennsylvania State University in 1992. Together with his father, Plaintiff owns about 250 acres of land which is used for farming (his

---

[5] The Court notes that, despite Defendants' objection at trial, a settlement offer between the parties was admitted into evidence. Upon due reflection, the Court understands that said offer was in violation of the Pennsylvania Rules of Evidence. As such, this evidence was not taken into account during the Court's determination of the present matter, nor will it again be referenced in this Opinion. FILED/ORIGINAL

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

2012 NOV 30 A 8:23

HELEN I. MORGAN
PRO AND CLERK

parents reside in a farmhouse on said acreage). Plaintiff, who has been a dairy farmer since the age of eight, leases another 600-or-so acres from 15 different families for farming purposes. Acquainted with Defendants from a young age, Plaintiff utilized their saw-sharpening business and hunted on the Property for several years. Plaintiff had an oral leasing agreement with them for the years 2007-2010, whereby he would pay $50.00 per acre to cultivate 65 acres of land on the Property ($3,250.00 per year). Though Mr. Thomas did not demand that he do so, Plaintiff paid the entire cost before the beginning of each season (he did this for the years 2007, 2008 and 2009).

At the time of the April 29, 2010 Agreement of Sale, Defendants were both 84 years of age. Mr. Thomas was hard of hearing,[6] suffered chronic lung problems due to Legionnaire's Disease, and macular degeneration left him legally blind, forcing him to surrender his driver's license. Though no medical documentation was provided to the Court, Mrs. Thomas' deposition indicated that she was somewhat hard of hearing herself, and a bit forgetful.[7] Plaintiff has no apparent health problems.

When he began leasing 65 acres of the Property in 2007, Plaintiff informed Mr. Thomas that he would be interested in buying the Property, should Mr. Thomas ever choose to sell it. Plaintiff testified that he was desirous of acquiring more land so that he could expand his operations and teach his sons how to farm. Precedent to the 2010 negotiations, Plaintiff was not aware of anyone in the area having been approached by an entity seeking to lease their property for Marcellus or Utica Shale gas

---

[6]Mr. Thomas wore hearing aids in both ears and had to have several questions repeated to him during his deposition.
[7]During her deposition, Mrs. Thomas had to have several questions repeated to her, and had trouble remembering the names of all of her grandchildren.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

2012 NOV 30 A 8: 23     4

HELEN I. MORGAN
PRO AND CLERK

extraction. Notably, there is no evidence of record to suggest that Defendants were aware of the impending Shale boom, either.

Plaintiff also stated that, despite his lack of knowledge with regards to Shale leasing, he wanted the mineral rights to any land he purchased so that he could prevent future strip-mining operations that could interfere with his farming. Plaintiff later stated his concerns regarding his obtaining of mineral rights to prevent possible strip mining to Attorney Robert Clark, who memorialized the Agreement (Attorney Clark testified to the same).

Plaintiff testified that, at some point shortly preceding the April 29, 2012 Agreement, Mr. Thomas had advised him of an existing gas lease on the Property that paid $1,000.00 per year. Plaintiff further stated that Mr. Thomas implied that this lease would transfer to him, should they finalize a deal. This conversation was never mentioned to Attorney Clark, and he did not gain knowledge of the lease prior to the Agreement because he did not run a title search on the Property.

Sometime in February of 2010, Mr. Thomas contacted Plaintiff and indicated that he and his wife were interested in selling the Property. Mr. Thomas stated that he wanted Plaintiff specifically to purchase the Property because he believed it would continue to stay in the Snyder family, thereby ensuring its use for farming purposes. Subsequently, Plaintiff and his father met with Defendants at their residence to discuss the transaction, wherein Mr. Thomas indicated that they desired $350,000.00 for the farm, with the right to live in the farmhouse for the remainder of their lives, or for so long as they chose to remain. Following this, Plaintiff informed Defendants that he would consider their terms and get back to them in the near future.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2012 NOV 30 A 8: 23    5

HELEN I. MORGAN
PRO AND CLERK

Plaintiff then contacted Attorney Robert Clark, of New Wilmington, Pennsylvania, and asked him to draw up a contract detailing what Plaintiff termed a "counter offer" to Defendants' proposal.

Pursuant to Plaintiff's requests, Attorney Clark drafted the counter offer and sent it to Plaintiff on April 23, 2010. Notable provisions of the proposed "Installment Agreement of Sale" include:

1. A $300,000.00 sale price, payable in three annual installments of $100,000.00 each. Plaintiff stated that the reduced price was to account for Defendants living on the property rent free, without maintenance expenses.

2. The right of Defendants to live in the residence during their lifetime, terminable at-will upon their demand. This provision also stated that Defendants were responsible for personal utilities and insurance on the farmhouse.

Notably, the initial Installment Agreement did not include a remedies clause (in the event of a default). Attorney Clark stated that he could not recall why he did not place such a clause in the proposal, as it was standard in most contracts of this nature. The Installment Agreement was also silent as to mineral rights. Clark testified that he did not believe such a provision needed to be memorialized in order for said rights to transfer.

It must be noted that, prior to this communication, Attorney Clark had represented Defendants on four different occasions from 2005 to the fall of 2009, including: the drafting of estate planning documents, resolving a contract issue regarding window installation on the Property, resolving their ownership and interest in an Agland Co-Op, and the sale of Defendants' saw sharpening business. At another point in 2007,

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2012 NOV 30 A 8: 23    6

HELEN I. MORGAN
PRO AND CLERK

Attorney Clark declined to represent Defendants in a rental dispute with a tenant, due to the fact that he had represented the tenant in a prior matter. Due to the abovementioned transactions, Defendants later testified that they regarded Attorney Clark as their "family attorney."

Plaintiff stated that he did not view Attorney Clark as representing his best interests, but that he merely viewed him as a "means to an end" of memorializing the Agreement. Plaintiff knew Attorney Clark had represented Defendants in the past, and stated that utilizing Clark to draft the contract would smoothen the process, as all essential terms were already agreed upon by the time of the April 29th meeting in Clark's office. Attorney Clark testified, however, that he believed that he was representing Plaintiff throughout the transaction. At no point preceding the finalization of the Agreement did either Attorney Clark or Plaintiff communicate to Defendants that Clark was solely representing Plaintiffs.

After receiving the Installment Agreement from Attorney Clark, Plaintiff, along with his father, took it to Defendants for discussion on April 23, 2010. Defendants testified that they were upset with Plaintiff for both reducing the purchase price and asking to pay in installments. The following day, Defendants refused to sign the Installment Agreement for this reason, even after Plaintiff explained why he had come up with the lower figure. With Defendants sticking to their demands of the full $350,000.00 to be paid in one lump sum, Plaintiff agreed to pay the higher amount. Plaintiff testified that, in exchange for his paying the full price, Defendants agreed to pay a monthly rent to live in the farmhouse for life, with the lease being terminable upon their demand.

Plaintiff then contacted Attorney Clark to detail the abovementioned changes. Clark then drafted a new Agreement of

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

7

2012 NOV 30 A 8: 23

HELEN I. MORGAN
PRO AND CLERK

Sale and sent it to Plaintiff. Plaintiff proceeded to call Defendants and arranged for the parties to meet in Clark's office on April 29, 2010. On even date, Plaintiff drove to the Property to pick up Defendants (again, Mr. Thomas was unable to drive). Plaintiff drove the parties to the office in Defendants' automobile because Mrs. Thomas had trouble getting into his truck.

The parties are in wide disagreement with regards to what followed at Attorney Clark's office during the April 29th meeting. At any rate, the following terms were among those set forth in the Agreement:

1. The transfer of the Property for the sum of $350,000.00, to be paid in full at closing, with nothing due at signing.[8]

2. Two separate remedies clauses, to be applicable in the event that either Buyer or Sellers should default. As it applies in this matter, the Court notes that, in the event of Sellers' default, Buyer would be entitled to specific performance and attorney's fees.

3. A provision stating that Buyer would take the Property subject to the following: "Prior grants, reservations, or leases as shown by instruments of record (example: coal, oil, gas, other minerals, etc.)."

4. A provision detailing a leasing agreement between Buyer and Sellers, to be entered into at closing, wherein Buyers would pay $250.00 per month, as well as all utilities.

Notably, with regards to the communications that transpired in Attorney Clark's office that day, Plaintiff's story and that of Attorney Clark are in complete unison. According to Plaintiff and Clark, Defendants were each given a copy of the

---

[8] Attorney Clark testified that, after he recommended a deposit, Mr. Thomas was adamant that one was not necessary for him to be legally bound. As Defendants have not disputed this, the Court accepts Attorney Clark's testimony as true.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

2012 NOV 30 A 8: 23    8

HELEN I. MORGAN
PRO AND CLERK

proposed Agreement. Clark then went through each paragraph of the proposal, summarizing the terms. Cognizant of Defendants' hearing deficiencies, Clark repeated anything that they did not understand on initial summation.

Through the course of his detailing the terms, Clark responded to numerous questions from both parties. At some point, there was a lengthy discussion regarding the Defendants' leasing of the farmhouse.[9] Though the lease itself seemed to indicate a standard month-to-month term, according to Plaintiff and Clark, the original demands of the Defendants - them having the right to live there for life, terminable at their demand - were assented to by both parties.

After Plaintiff agreed to several other changes requested by Defendants, Attorney Clark provided them to his secretary, who made said alterations. With the changes made, Attorney Clark read them aloud to the parties. All parties then indicated their understanding of the Agreement. Attorney Clark then stated to Defendants that, though they were in accord with the terms, they did not have to sign it that day, and had the right to have it reviewed. Attorney Clark could not recall whether he specifically stated that Defendants had the right to have the Agreement reviewed by an attorney. Clark further stated that he believed that he had referred Defendants to separate counsel following his declining to represent them in a 2007 tenant dispute due to a conflict of interest, but could not recall which attorney he had recommended. Clark stated that he believed this attorney to be representing Defendants in this real estate transaction.

Nonetheless, according to both Clark and Plaintiff, Defendants stated that they did not wish to seek independent

---

[9] After discussion, the [S9?ORIGHeAtmonth leasing provision was added to the Agreement in the April, 29 2012 meeting at Attorney Clark's office.

2012 NOV 30 A 8: 23 9

HELEN I. MORGAN
PRO AND CLERK

review. All parties then signed the Agreement of Sale in each other's presence, with Attorney Clark signing as a witness.

Though the time frame is not clear, Plaintiff stated that, at some point antecedent or subsequent to the Agreement, Mr. Thomas indicated that it was unnecessary for Plaintiff to pay for his leasing of the Property for the year 2010, since he would soon own it.

The statements of Defendants differ vastly from that of Plaintiff and Clark. The Court notes that, especially with regard to Mr. Thomas, the depositions indicated some forgetfulness, and the testimony itself was often contradictory. Mr. Thomas initially stated that he believed that the April 29, 2010 meeting was solely to discuss the rental of the farmhouse, but later said that the parties agreed upon a $350,000.00 purchase price "at that time." Mr. Thomas also averred that he never signed any papers, but seconds later reversed his position, stating that he did sign what he believed to be the rental contract. Soon after, Mr. Thomas then became upset with Plaintiff's counsel and refused to answer further questions.

In disaccord with her husband, Mrs. Thomas stated that the parties drove to Attorney Clark's office for the purpose of selling the farm for $350,000.00. Mrs. Thomas further said that Defendants agreed to pay $250.00 per month in rent. However, she also testified that Attorney Clark did not at any point read the Agreement aloud, and that, although the signature on the Agreement appeared to be hers, a few of the letters in her last name were "changed."

In mid-to-late May of 2010, Plaintiff learned that Defendants were being courted by a gas-leasing company. Concerned that his Property rights could be affected, he contacted Attorney Clark, who sent Defendants a letter saying that it would be "unusual" for a leasing entity to want to renew

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2012 NOV 30 A 8: 23    10

HELEN I. MORGAN
PRO AND CLERK

a lease prior to the expiration of one that is still currently in effect (the $1,000 per year lease, which was with a different company than the one Defendants were negotiating with, was set to expire in November). Attorney Clark further advised Defendants to contact him if they had any questions.

On May 27, 2010, Defendants entered into a lease with East Coast Resources, LLC, whereby they received $176,000.00 in advanced royalties. Notably, in his deposition, Mr. Thomas said that the asking price for the Property was $350,000.00 "at that time," but "there's other things [that] come in." When Plaintiff's counsel asked him to clarify, Mr. Thomas stated that $350,000.00 was the price "before the gas was something. The gas man was on my porch the day after we talked in [Attorney Clark's office, located in] New Wilmington[, Pennsylvania]."

On June 1st, Defendants sent Plaintiff a letter informing him of their intent to rescind the Agreement. Plaintiff, having attained the necessary financing, responded on June 10th that he was ready and able to pay at closing (scheduled for June 18th). Defendants failed to attend closing or accept the $350,000.00 at any point thereafter.

It is from these events that Plaintiff's Amended Complaint and Defendants' Answer and counter-claim are based. Plaintiff also filed a *lis pendens* against the Property with the Lawrence County Prothonotary.

## B. Applicable Law

In order for a contract to be formed, offer, acceptance and consideration, or a mutual meeting of the minds must be present. Ribarchak v. Municipal Authority of City of Monongahela, 44 A.3d 706, 708 (Pa. 2012); Yoder v. American Travellers Life Ins. Co., 814 A.2d 229, 233 (Pa.Super. 2002); Jenkins v. County of Schuylkill, 441 Pa.Super. 642, 648, 658 A.2d 380, 383, *allocatur* denied, 542 Pa. 647, 666 A.2d 1056 (1995). Further, the parties

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2012 NOV 30 A 8: 23      11

HELEN I. MORGAN
PRO AND CLERK

must have agreed upon the material and necessary details of the bargain, thereby making the nature and extent of their mutual obligations certain. Lackner v. Glosser, 892 A.2d 21, 30 (Pa.Super. 2006) (citing Peck v. Delaware County Board of Prison Inspectors, 572 Pa. 249, 260, 814 A.2d 185, 191 (2002)).

Under the doctrine of equitable conversion, on the very day a contract for the sale of land is signed, the purchaser becomes the equitable or beneficial owner of any benefit accruing to property between said date and the date of the conveyance (barring any contrary contractual language). Zitzelberger v. Salvatore, 458 A.2d 1021, 1023, 312 Pa.Super. 402, 405 (1983); Byrne v. Craig, 332 A.2d 472, 474, 231 Pa.Super. 531, 535 (1974); DiDonato v. Reliance Standard Life Ins. Co., 433 Pa. 221, 224, 249 A.2d 327, 329 (1969). Further, subject to a provision stating otherwise, the seller of real estate conveys his property in its entirety; including all of the rents, issues and profits thereof. See 21 P.S. §3.

To justify judicial rescission of a contract, "Inadequacy of price, improvidence, surprise, and mere hardship, none of these, nor all combined, furnish an adequate reason. . . [for] such action something more is demanded. . . such as fraud, mistake or illegality." Frey's Est., 223 Pa. 61, 65, 72 A. 317, 318 (1909). A presumption of incapacity is not raised by old age, and, without evidence of some unfair advantage due to fraud, mistake or illegality, mere weakness of intellect resulting from a party's elderly condition is not legal grounds to set aside a contract. Taylor v. Avi, 415 A.2d 894 (Pa.Super. 1979); Dulnikowski v. Stanziano, 195 Pa.Super. 508, 172 A.2d 182 (1961); Aiman v. Stout, 42 Pa. 114 (1862).

Specific performance is an equitable remedy that permits the court "to compel performance of a contract when there exists in the contract an agreement between the parties as to the

FILED/ORIGINAL

2012 NOV 30 A 8: 23 12

HELEN I. MORGAN
PRO AND CLERK

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

nature of the performance." <u>Geisinger Clinic v. Di Cuccio</u>, 414 Pa.Super. 85, 109, 606 A.2d 509, 521 (1992). A unique remedy involving the exercise of the court's discretion, specific performance has mainly been utilized to compel the conveyance of real estate wherein a seller violates a land-sale contract. <u>Agnew v. Southern Ave. Land Co.</u>, 204 Pa. 192, 53 A. 752 (1902); <u>Borie v. Satterthwaite</u>, 180 Pa. 542, 37 A. 102 (1897).

"Specific performance should only be granted where the facts clearly establish the plaintiff's right thereto, where no adequate remedy at law exists, and where justice requires it." <u>Clark v. Pennsylvania State Police</u>, 496 Pa. 310, 313, 436 A.2d 1383, 1385 (1981) (citations omitted). If "a transaction is inequitable or unjust in itself or if [it] is rendered so by matters subsequently occurring, specific performance may be denied. . . and while no rule applicable to all cases can be announced. . . specific relief will be granted if apparent that, in view of all the circumstances, it will subserve the ends of justice, and will be withheld where, on a like view, it appears hardship or injustice will result to either of the parties." <u>Snow v. Corsica Construction</u>, 459 Pa. 528, 532, 329 A.2d 887, 889 (1974). Further, a party will not be granted specific performance if the evidence is so uncertain, inadequate, equivocal, ambiguous, or contradictory as to render findings or legitimate inferences therefrom mere conjecture. <u>Barnes v. McKellar</u>, 434 Pa.Super. 597, 644 A.2d 770, 776 (1994).

In terms of the allowance of independent evidence to define the meaning of a written contractual term, it is well founded that the parol evidence rule applies when a party alleges an oral agreement that is inharmonious with the print itself. Our Supreme Court has stated:

> Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2012 NOV 30 A 8: 23 13

HELEN I. MORGAN
PRO AND CLERK

declares the writing to be not only the best, but the only, evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract ... and **unless fraud, accident or mistake be averred**, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence.

Yocca v. Pittsburgh Steelers Sports, Inc., 578 Pa. 479, 497, 854 A.2d 425, 436 (2004) (quoting Gianni v. Russell & Co., 281 Pa. 320, 126 A. 791, 792 (1924)) (emphasis added).

## C. **Application**

Before addressing the defenses raised by Defendants, due to the oft-conflicting testimony of the parties in this matter, the Court feels it prudent to make several determinations of both law and fact.

Initially, the Court finds that Defendants had legal capacity to contract. Despite being in their mid-eighties, Defendants had no documented medical history of Alzheimer's Disease or any other similar ailment that would render them legally unable to understand the gravity of contract negotiations. The Court realizes that Defendants were hard of hearing and a bit forgetful, but such is not uncommon from individuals of their age. To hold that these factors, without more, justify contract rescission, would be to strip many of the Commonwealth's seniors from utilizing their right to bargain. See Taylor v. Avi, 415 A.2d 894 (Pa.Super. 1979) (holding that neither infirmity nor old age is a per se indication of incapacity). The Court is also persuaded by the fact that there is no record of Defendants being incapacitated when entering into a gas lease only a few short weeks after the Agreement.

Additionally, the Court is not persuaded by Mr. Thomas' statement that he believed the parties traveled to Attorney Robert Clark's office for the sole purpose of discussing the

rental of the farmhouse. Pre-Agreement negotiations, as well as the testimony of his own wife, Clark and Plaintiff all indicate otherwise. As such, the Court finds that all parties were well aware of the purpose of the April 29th meeting at Clark's office.

The Court further finds that Mrs. Thomas' signature on the Agreement was scribed solely by her. Her testimony that several letters in her last name appeared to be "changed" does not warrant a contrary finding; especially considering that both Attorney Clark and Plaintiff testified that she signed in their presence. Accordingly, the Court holds that all parties signed the Agreement in each other's company.

Defendants' first defense is that there was no meeting of the minds as to the material term of their right to live in the farmhouse after closing. If the Agreement is enforceable, the parties must have agreed upon the material details of the bargain, thereby making the nature and extent of the mutual obligations certain. See Lackner v. Glosser, 892 A.2d 21, 30 (Pa.Super. 2006). The Court will address this claim despite it possibly being moot, due to the fact that Defendants do not reside on the Property at this point in time, and the likelihood that Mrs. Thomas ever will again is slight.

The Agreement itself provided for a $250.00 monthly lease, wherein Defendants would pay all utilities. While this would seem to indicate a month-to-month lease terminable by either party, the evidence provided to the Court suggests the written language was contrary to the true intent of the parties. Hence, said provision can be classified as a mistake in memorialization, allowing for the use of parol evidence. See Yocca v. Pittsburgh Steelers Sports, Inc., 578 Pa. 479, 497, 854 A.2d 425, 436 (2004).

Plaintiff stated that, from the onset of preliminary negotiations, Defendants made it known that they wished to

53RD
JUDICIAL
DISTRICT

AWRENCE COUNTY
PENNSYLVANIA

FILED ORIGINAL

2012 NOV 30  A 8: 23

HELEN I. MORGAN
PRO AND CLERK

reside in the farmhouse for as long as they so chose. Desiring the land solely for farming purposes, Plaintiff never objected to this demand. After Defendants rebuked his counter offer of a $50,000.00 reduction in the purchase price of the Property in exchange for them retaining said right, a $250.00 per month agreement, plus utilities, terminable at Defendants' will, was reached in Attorney Clark's office on April 29th. The testimony of both Plaintiff and Clark indicate that this term was reached after lengthy discussion, with Clark subsequently reading the term to the parties after the contract was revised. Even Mrs. Thomas agreed that this very term as assented to. Therefore, the Court finds that Defendants were entitled to exactly what they desired: the right to live in the farmhouse for as long as they so chose, at a rate of $250.00 per month. Accordingly, this defense is meritless.

Defendants next assert that there was no meeting of the minds as to the material term of the disposition of mineral rights. For several reasons, the Court finds this argument to be misguided.

Initially, Plaintiff stated that, prior to the Agreement, Mr. Thomas informed him of a pre-existing gas lease that netted approximately $1,000.00 per year, and that, should they agree to a deal, the lease would transfer with the Property. Neither Defendant mentioned this conversation in their depositions.

Both Plaintiff and Attorney Clark testified that Plaintiff informed Clark that he was desirous of obtaining mineral rights in order to prevent future strip mining on the Property. The proposed Installment Agreement was silent as to mineral rights, as Attorney Clark felt that such a provision was not necessary for said rights to transfer. Although Attorney Clark was

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2012 NOV 30 A 8: 23       16

HELEN I. MORGAN
PRO AND CLERK

correct in this regard,[10] a clause expressly denoting the transfer of said rights was added to the April 29th Agreement.

Pertaining to Attorney Clark's reading of the contractual terms to the parties, though Defendants both testified to the contrary, the Court finds the testimony of Clark and Plaintiff to be the more credible evidence. Both Clark and Plaintiff stated that Clark summarized each paragraph of the drafted Agreement. It can be inferred, then, that the paragraph pertaining to mineral rights was read aloud to Defendants. Cognizant of Defendants' hearing issues, Clark stated that he was sure to repeat any provisions that they did not initially comprehend. When the parties asked questions, Clark answered. When the parties requested (and later agreed upon) certain changes, Clark made the alterations and read them to the parties. While most of the changes were in regard to the leasing provision, there is no evidence that Defendants requested any changes to the paragraph expressly providing for the transfer of such rights.

These facts, coupled with the aforementioned discussion wherein Mr. Thomas indicated to Plaintiff that a prior gas lease would transfer upon sale, provides this Court with enough evidence to infer that Defendants were aware that they were indeed transferring mineral rights. Accordingly, it cannot be said that there was no meeting of the minds as to the material term of the transfer of mineral rights. As such, all material terms were agreed upon and a valid Agreement exists.

Finally, Defendants assert that the inequitable, unjust, and/or unconscionable nature of the events both precedent and subsequent to the Agreement preclude specific performance.

---

[10] See 21 P.S. §3 (stating that, subject to a provision to the contrary, the seller of real estate conveys his property in its entirety).

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2012 NOV 30 A 8: 23          17

HELEN I. MORGAN
PRO AND CLERK

Having already held that Attorney Clark read, and that Defendants understood, the material terms of the Agreement, the remainder of this argument hinges on Defendants' relationship with Clark, and whether that relationship makes specific performance inequitable. The Court notes that its role in this matter is not to determine Attorney Clark's conduct as it relates to professional ethical rules, but rather to determine how said conduct impacted the negotiations surrounding the Agreement.[11]

While "no rule applicable to all cases can be announced. . . specific relief will be granted if apparent that, **in view of all the circumstances, it will subserve the ends of justice**, and will be withheld where, on a like view, it appears hardship or injustice will result to either of the parties. Snow v. Corsica Construction, 459 Pa. 528, 532, 329 A.2d 887, 889 (1974) (emphasis added). More generally, equity regards as done that which ought to be done. The Court holds that the equities lie with specific enforcement.

Attorney Clark represented Defendants in four varying matters, beginning in 2005 and ending in late 2009. It is uncontroverted that Clark never disclosed to Defendants that he was not representing them in the instant matter, and that Defendants viewed him as their "family attorney." These factors, then, would seemingly make Defendants ripe to be fooled into agreeing to terms unilaterally favoring Plaintiff. The credible evidence, however, indicates that this was not the case. Attorney Clark's representation of Plaintiff here can hardly be characterized as the type of zealous advocacy that

---

[11] Because the Rules of Professional Conduct do not provide any substantive right of civil action, they will not again be referenced in this Opinion. See Maritrans G.P., Inc. v. Pepper, Hamilton & Scheetz, 602 A.2d 1277 (Pa. 1992); Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority, 489 A.2d 1291 (Pa. 1985).

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2012 NOV 30 A 8: 23          18

HELEN I. MORGAN
PRO AND CLERK

most typically conjure when defining the role of an attorney: he was simply a legal means to finalizing the terms that the parties themselves agreed upon.

The record indicates that, as distant neighbors, the parties in this transaction had an amicable relationship (at least prior to the April 23, 2010 proposed Installment Agreement). Mr. Thomas knew Plaintiff since he was a child, allowed him permission to hunt on the Property, and the parties had a longstanding oral leasing contract. Wanting the Property to be utilized for farming after it was sold, it was Mr. Thomas who telephoned Plaintiff in the spring of 2010, indicating that he was interested in selling, and that, for the abovementioned reason, he specifically wanted Plaintiff to be the purchaser.

After meeting with Defendants in their home, Plaintiff learned that they wanted $350,000.00 and the right to live in the farmhouse for as long as they chose. Plaintiff knew Defendants had used Attorney Clark in the past, and believed Clark could smoothen the legal process to get the deal done. Plaintiff used Clark's services as a mere "means to an end," not as a shrewd negotiator to secure a better deal for himself (notably, the record indicates that the April 23, 2010 "counter offer" of $300,000.00 was not the design of Attorney Clark, but rather Plaintiff).

When Defendants refused the counter offer, Plaintiff directed Clark to draw up a new proposal. After driving Defendants to Clark's office, the parties negotiated several changes while Clark presided. There is no evidence to indicate that any of these changes were made solely to benefit Plaintiff, or that either Clark or Plaintiff unduly pressured Defendants into agreeing to them.

After the terms were finalized, Clark informed Defendants that they had the opportunity to have the contract reviewed

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2012 NOV 30 A 8: 24    19

HELEN I. MORGAN
PRO AND CLERK

before signing (though he could not recall whether he specifically said "by another attorney"). Aware of this suggestion, Defendants were adamant that they were already satisfied with all terms and signed the Agreement immediately thereafter.

Further, Attorney Clark's letter to Defendants stating that it would be "unusual" for a gas leasing company to want to renew a lease prior to an old one's expiration had no impact on the terms of April 29th Agreement, as it was sent the following month. The fact that Defendants ignored the letter by not responding to Clark and signing the May 27, 2010 gas lease only strengthens the finding that said correspondence did nothing to prejudice them.

In essence, Defendants were to receive the two main things they desired *before Attorney Clark came into the picture*: $350,000.00 due upon closing, and the right to live in the farmhouse for as long as they chose. Further, the paragraphs regarding mineral rights and remedies for default, which are typical in real estate contracts, were both read aloud and assented to. Defendants knew exactly what they were giving up that day, and they did so understandingly and voluntarily. The Court therefore holds for Plaintiff on the issue of specific performance and attorney's fees. Additionally, the Court finds that Plaintiff's statement that Mr. Thomas informed him that it would not be necessary to pay for the 2010 leasing of the Property to be credible: hence Defendants' counter claim for damages for breach of said lease are denied.

Though it is probable that the Property would have been worth substantially more than the agreed-upon price had it not been sold for another month, this cannot be taken into consideration, as the fact that Defendants "found a more profitable way of disposing of the property in question does not

FILED/ORIGINAL

2012 NOV 30 A 8: 24      20

HELEN I. MORGAN
PRO AND CLERK

supply the equitable considerations that would cause a court to deny specific performance." Snow v. Corsica, 459 Pa. 528, 329 A.2d 887, 890 (1974). At the moment of signing on April 29, 2010, Plaintiff became the equitable owner of the Property, and is hence entitled to any benefit accruing to it between even date and the date of conveyance. See Zitzelberger v. Salvatore, 458 A.2d 1021, 1023, 312 Pa.Super. 402, 405 (1983); Byrne v. Craig, 332 A.2d 472, 474, 231 Pa.Super. 531, 535 (1974); DiDonato v. Reliance Standard Life Ins. Co., 433 Pa. 221, 224, 249 A.2d 327, 329 (1969). Because the gas lease Defendants signed with East Coast Resources, LLC, accrued subsequent to the Agreement, Plaintiff is entitled to all of its benefits. As such, the cost of the Property in the Agreement is reduced by the sum of the advanced royalties paid to Defendants, and the gas lease is hereby assigned to Plaintiff.

53RD
JUDICIAL
DISTRICT

WRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAl

2012 NOV 30 A 8: 24

ELEN I. MORGAN
PRO AND CLERK

SCOTT SNYDER,                       : IN THE COURT OF COMMON PLEAS

      Plaintiff              : LAWRENCE COUNTY, PENNSYLVANIA

vs.                                 : NO. 11091 of 2010, C.A.

GEORGE M. THOMAS, III,              :
Executor of the Estate of
GEORGE M. THOMAS, JR., and          :
DOROTHY THOMAS,

                                  :

      Defendants

## ORDER OF COURT

AND NOW, this _29th_ day of _November_, 2012, this case being before the Court on October 9, 2012, for a bench trial on a Demand filed by the Plaintiff, Scott Snyder, appearing with his attorney, Phillip L. Clark, Jr., Esq., and the Defendants, George M. Thomas, Jr. and Dorothy Thomas, represented by the Executor of their Estate, George M. Thomas, III, appearing with their attorneys, Bradley S. Dornish, Esq., and Charles C. Bell, Esq., after consideration of said trial and the evidence of record, the Court makes the within Findings of Fact, and enters the following Order in accordance with the attached Opinion, and it is hereby **ORDERED, ADJUDGED, and DECREED** as follows:

1. Pursuant to the April 29, 2010 Installment Agreement of Sale entered into by the parties, Plaintiff's request for specific performance of Defendants' property, situated at 224 State Route 956 in Slippery Rock, Pennsylvania, is **GRANTED**.

2. Plaintiff's request for a $176,000.00 reduction in the purchase price of the aforementioned property, that sum representing the amount of advanced royalties paid to Defendants by East Coast Resources, LLC as a result of a gas leasing contract signed on May 27, 2010, is **GRANTED**.

53RD
JUDICIAL
DISTRICT

WRENCE COUNTY
PENNSYLVANIA





3. Plaintiff's request for an assignment of the May 27, 2010 gas leasing contract between Defendants and East Coast Resources, LLC is **GRANTED**.

4. Plaintiff's request for attorney's fees, based on the contractual language of the April 29, 2010 Installment Agreement of Sale is **GRANTED**. Defendants are ordered to pay such fees in the amount of $7,122.50, this number being based on evidence provided by Plaintiff's counsel at trial. The Court will consider an additional motion for any fees incurred for counsel's services on or after the date of trial.

5. Defendants' counter claim for damages in the amount of $3,250.00, based on Plaintiff's failure to pay for his 2010 leasing of 65 acres of the property in dispute is **DENIED**.

6. The Clerk of Courts shall properly serve notice of this Order and attached Opinion upon counsel of record; and if a party has no counsel, then upon said party at their last known address as contained in the Court's file.

BY THE COURT:

John W. Hodge, J.

ac

53RD
JUDICIAL
DISTRICT

AWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2012 NOV 30 A 8: 23

HELEN I. MORGAN